[No. 35204.  *En Banc.*  March 27, 1961.]

THE STATE OF WASHINGTON, *Appellant*, v. ANACORTES VENEER, INC., *et al.*, *Respondents.*[1]

[1]Reported in 360 P. (2d) 341.

The Attorney General, Hayden H. Hilling, Robert F. Hauth, and Robert J. Hall, Assistants, for appellant.

John Cheney, Livesey, Kingsbury & Livesey, Evans, McLaren, Lane, Powell & Beeks, J. Allan Evans, and Abbott, Lant & Fleeson, for respondents.

FINLEY, C. J.—On August 5, 1952, a fire started on timber land owned by one of the respondents, and spread to timber land owned by two other respondents before it was brought under control. One of the respondent logging companies had logged the land on which the fire started and had left slash (i.e., debris consisting of branches, bark, roots, et cetera) lying on the ground. The other respondent logging company had logged, in a similar manner, the contiguous land to which the fire spread. The logging process, although pursued in compliance with all state regulations, had been conducted during a hot, dry period. Because of the weather conditions, it was then unlawful to burn the slash.

This action was brought by the state to recover the costs it incurred in fighting the fire. The basis of liability of the respondents is the "slash act," RCW 76.04.370, which, in part, reads as follows:

"Any land in the state covered wholly or in part by inflammable debris created by logging . . . and which by reason of such condition is likely to further the spread of fire and thereby endanger life or property, shall constitute a fire hazard, and the owner thereof and the person responsible for its existence shall abate such hazard. If the state shall incur any expense from fire fighting made necessary by reason of such hazard, it may recover the cost thereof from the person responsible for the existence of such hazard or the owner of the land upon which such hazard existed . . ."

The state interprets the statute to mean that all respondents should be held jointly and severally liable for the total cost to the state.

The respondents, arguing in support of the trial court's judgment dismissing the action, assert that, inasmuch as they had no opportunity lawfully to abate the slash hazard after it was created by the logging operation (the trial court found that, apart from burning which was at that time unlawful, there was no practical way to remove slash from the area involved), application of the statute under these facts would deprive them of property without due process of law. We find this argument to be without merit.

In *State v. Canyon Lbr. Corp.* (1955), 46 Wn. (2d) 701, 284 P. (2d) 316, the respondent lumber company urged that RCW 76.04.370 violates the due process clauses of the state and federal constitutions by imposing liability upon those engaged in logging who either create a hazardous condition or who suffer a hazardous condition to remain upon their land. We rejected this argument and upheld the statute as a valid exercise of the state's police power.

The underlying justification of the exercise of the state's police power in the legislation here involved is that the logging business, dependent upon the manner of conducting operations or upon weather conditions, or a combination of the two factors, can be extremely dangerous to both life and property.

The logic or reasoning of the statute is explicit; *i.e.*, that the safe conduct of logging operations is a responsibility and expense of those engaged in the business. There certainly is no specific language in the statute permitting respondents, or persons similarly situated, to escape liability for fire-fighting costs incurred by the state by explaining that they encountered practical or other difficulties justifying their failure to remove slash. It is of course quite clear that, if the danger to life and property is really significant, the state, under its police power, may require elimination of the danger, or it may impose upon those responsible for the danger an absolute duty to safeguard against it. In our opinion, the legislature has done just this as to costs of fire

fighting in enacting the pertinent portion of RCW 76.04.370 without expressing therein any qualifications as to the liability of one who creates a slash fire hazard. The reasonableness of the statute is illustrated by the facts of the instant case. Respondents conducted their operations during a hot and dry season, when forest fires were especially likely to occur and would be more than usually dangerous, knowing that thereby the fire hazard which they would be powerless to abate would be continued if not increased. We hold that the respondents are liable to the state under RCW 76.04.370.

■  The extent of liability of the individual respondents is to be ascertained by reference to the statute. The person responsible for the hazard and the owner of the land on which it exists are liable to the state for its cost of "fire fighting made necessary *by reason of such hazard.*" (Italics ours.)

What fire-fighting costs were made necessary by which hazards, as defined by the statute, is purely a question of fact to be determined at trial. We may illustrate our concept of the operation of the statute by discussing a hypothetical situation (the present state of the record in the instant case does not inform us of the exact nature of the circumstances therein) which, we suspect, would frequently occur.

In cases where a slash hazard existed at the source of the fire and the circumstances were such that the fire would not have spread to surrounding areas had not slash remained on the originating tract, it would seem ordinarily to follow that *all* of the fire fighting would have been "made necessary by reason of such hazard." In such cases, the owner of the land where the fire originated and the logging operator responsible for the existence of the hazard thereon would each be liable for the whole of the state's fire-fighting costs. Pursuing our hypothetical situation, the extent of the liability of the owners of contiguous slash-covered land to which the fire spread, and of the operators who created and left slash on that land, would depend on other facts. Certainly, the costs of fighting the fire on their own land, or

that logged by them, where a slash hazard was left, would ordinarily be attributable to such owners or operators. Further, however, it is conceivable that the fire might have spread from the land contiguous to the place of origin to still other land that would have been untouched but for the slash hazard on the contiguous land, thereby making necessary additional fire-fighting costs attributable to the hazards on both the land of origin and the contiguous land.

Under our view of the statute, it is quite possible for the costs of fire fighting on a given portion of the burned area to have been "made necessary" by more than one owner or more than one operator. On the other hand, it is conceivable that the existence of a slash hazard on certain land may have contributed little or nothing to the state's fire-fighting costs because of the nature of the spreading of the fire, topographical characteristics and their effects on the mechanics of fire fighting, or other factors. These possibilities present questions of fact which may be summarized in the language of RCW 76.04.370: how much of the fire-fighting expense incurred by the state was made necessary by each of the various hazards?

The respondents have raised, in the presentation of their constitutional argument, the issue of the right to contribution among the parties if more than one should be held liable for certain of the costs. They assert as a general proposition that contribution is not available to joint tort-feasors. The state's response is that it did not bring an action in tort, but sought to impose a purely statutory liability. The issue of a future right to contribution among the respondents, if any, after the state has received reimbursement for its fire-fighting costs, is not properly a part of the instant case, and we decline to undertake to answer it here. (We might point out that one side of the issue has been presented by the state, which has no particular interest in the respondents' contribution rights *inter se* so long as it is paid, and the other side was presented by the respondents as a group, although their interests are potentially antagonistic.)

For the foregoing reasons, the trial court's judgment of dismissal is reversed and the case is remanded with direc-

tions to proceed in accordance with the views expressed herein. The appellant will recover its costs on this appeal.

MALLERY, HILL, ROSELLINI, and HUNTER, JJ., concur.

FOSTER, J. did not participate.

DONWORTH, J. (dissenting)—This is an action instituted by the state of Washington against five corporate defendants, pursuant to the provisions of RCW 76.04.370 (also referred to as the slash statute), to recover the cost of fighting a forest fire. The fire was of unknown origin and started on August 5, 1952, on certain land located in Whatcom county owned by Anacortes Veneer, Inc., and spread to contiguous timber lands owned by certain other defendants. The remaining defendants above named either were owners of the timber situated thereon or were conducting logging operations thereon.

The three defenses affirmatively raised in the defendants' answers were (1) that the fire started during the logging operation which produced the inflammable debris (herein called slash) and it was impossible for defendants to abate the fire hazard; (2) that it was unlawful to burn the slash prior to the start of the forest fire; and (3) that the statute is unconstitutional under the due process clause if interpreted to apply to the above-described situation in which defendants found themselves at the time the fire started. The fifth corporate defendant also asserted that the statute denied it equal protection of the law.

The state's motions to strike these defenses were denied by the trial court after argument except the allegations of unconstitutionality. The remaining affirmative allegations of the answers were denied by the state's reply and the case came on for trial before the court sitting without a jury. At the close of the reception of evidence (the trial consumed three days), the court rendered an oral opinion but took the case under advisement as to the principal issues. Several months later, the court filed a written memorandum decision holding in favor of the five defendants.

Thereafter, the trial court entered its findings of fact, conclusions of law, and judgment dismissing the state's com-

plaint with prejudice. Parenthetically, the findings and conclusions adopted by the court were those proposed by the defendants. The court fixed the total amount reasonably incurred by the state in fighting the fire at $4,695.30. The state has appealed from the judgment of dismissal.

In its brief, the state sets out twenty-six assignments of error, but states its principal purpose in appealing to this court as being "to establish (1) that RCW 76.04.370 applies to newly created slash and (2) so applied, it is a reasonable and legitimate exercise of the police power."

The crucial facts as found by the trial court are stated in finding of fact No. 4, as follows:

"That the defendants acting in their respective capacities as owners of the land or timber and/or as logging operators, as the case may be, were in no way careless or negligent. That the logging debris upon the land involved was a normal and natural accumulation of logging debris and the logging conducted upon the premises involved was in all respects done lawfully and in compliance with all existing fire regulations. *That there was no practical way to remove said logging debris at any time after its creation and prior to the fire except by burning* and at no time subsequent to the creation of said logging debris were the defendants or any of them permitted by the State authorities or any other authorities to burn said logging debris; and any attempt by any defendant to remove the inflammable material by burning prior to the fire would have been in violation of law." (Italics mine.)

(The only portion of this finding which is challenged by the state is that italicized above. Since there was substantial evidence to support the challenged portion, it should be accepted as true by this court.)

The decisive legal question presented is whether the trial court's conclusion of law No. 3 correctly stated the law applicable to this case. That conclusion was:

"The statute R.C.W. 76.04.370 does not impose an absolute liability for the creation of logging debris in the circumstances presented by this case and does not impose liability where the logging debris in logging operations cannot be disposed of by practical means prior to a fire. That where the circumstances, as in this case, are such that the logging

debris cannot be disposed of prior to a fire by practical means, then the application of R.C.W. 76.04.370 to impose liability in such circumstances would be unconstitutional."

In contending that this conclusion is erroneous, the state relies on our recent decision in *State v. Canyon Lbr. Corp.*, 46 Wn. (2d) 701, 284 P. (2d) 316 (1955). In that case, we had the question of the constitutionality of RCW 76.04.230 submitted on a demurrer to the complaint. It was alleged that there were nearly three thousand acres of slash-covered land. A fire started at a time when no logging operations were under way on the land. The existence of the slash necessitated the fire-fighting expense for which the state sought recovery.

The trial court in this case, in his memorandum decision, commented on our decision in the *Canyon Lumber* case as follows:

"The facts may be supplemented as follows:

"(1) Defendants and each of them complied with all existing fire regulations.

"(2) There was no practical way to remove the existing slash except by burning, and this method of abatement was not permitted.

"On the matter of liability, this Court construed the statute in State v. Canyon Lumber Corporation, et al., 46 Wash. (2d) 701. The constitutionality of the statute was upheld. It was said that liability will result under the statute if a party 'has either created the hazardous condition or has suffered it to remain upon his land.' Now, at first blush, this language seems sweeping, yet in view of the entire consideration of the case by the Court it seems that several conclusions may be drawn:

"(1) The logger is liable if he creates the hazard or if he suffers it to remain. (This construction imposes an absolute liability.)

"(2) The logger is liable only if he both creates the hazard and then fails to remove it.

"(3) The owner is liable if he permits a contracting logger to create the hazard on his land, or if he suffers it to remain thereon after it has been created by the logger. (This construction imposes an absolute liability.)

"(4) The owner is liable if he suffers the hazard to remain upon his land.

"The point in issue is considered under paragraphs 6, 7 and 8. At the outset the Court states that the statute is designed to provide for the removal of a hazard created by logging and 'the sanction imposed, in the event of failure to remove, is liability for fire fighting costs made necessary by such hazard.' This implies to me that the gravamen of the wrong is in permitting the hazard to remain, and it is difficult for me to read into this by implication a wrong for logging lawfully done in compliance with all fire regulations. I hesitate to do so by implication. If such is the intention of the decision, then the objection raised by respondents in the case could have been more clearly answered."

Initially, it should be determined whether the trial court correctly construed the statute.

RCW 76.04.370 reads as follows:

"Any land in the state covered wholly or in part by inflammable debris created by logging or other forest operations, land clearing, or right of way clearing and which by reason of such condition is likely to further the spread of fire and thereby endanger life or property, shall constitute a fire hazard, and the owner thereof and the person responsible for its existence shall abate such hazard. If the state shall incur any expense from fire fighting made necessary by reason of such hazard, it may recover the cost thereof from the person responsible for the existence of such hazard or the owner of the land upon which such hazard existed, and the state shall have a lien upon the land therefor enforceable in the same manner and with the same effect as a mechanic's lien. Nothing in this section shall apply to land for which a certificate of clearance has been issued.

"If the owner or person responsible for such hazard refuses, neglects, or fails to abate the hazard, the supervisor may summarily cause it to be abated and the cost thereof may be recovered from the owner or person responsible therefor, and shall also be a lien upon the land enforceable in the same manner with the same effect as a mechanic's lien. The summary action may be taken only after twenty days' notice in writing has been given to the owner or reputed owner of the land on which the hazard exists either by personal service or by registered letter addressed to him at his last known place of residence."

The state takes the position that, under the statute, liability for fire-fighting costs is dependent only upon the mere

*existence* of the hazard and not upon a failure to abate the hazard. Thus, it is contended that the fact that abatement may be impractical or even impossible is irrelevant to an action to recover fire-fighting costs.

Undoubtedly, a literal interpretation of the statute lends some support to the state's position. It is clear that the first paragraph imposes two obligations, to wit (1) to abate the hazard; (2) to reimburse the state for those costs incurred from fire fighting made necessary by reason of the existence of such hazard. What is not so clear is whether the two obligations are independent. In other words, does liability for fire-fighting costs arise because of a breach of the duty to abate, or is such liability entirely separate and distinct from abatement?

Since the duty to reimburse the state for fire-fighting costs immediately follows the creation of the duty to abate the hazard, it is arguable that liability is contingent upon failure to abate the hazard. However, in the second paragraph there is further created the duty to reimburse the state for its costs in abating the hazard, and here the duty is *expressly* made dependent upon a refusal, neglect, or failure to abate. Thus, argues the state, if the legislature had intended liability for fire-fighting costs to be dependent upon failure to abate the fire hazard, it would have expressly said so as it did in regard to *costs of abatement* in the second paragraph.

Although the matter is not altogether free from doubt, the state's argument is the more compelling one and would seem to be conclusive here but for the legislative history of the slash statute.

The slash act was enacted in 1917. It was amended in 1921, 1929, 1939, and 1951. See Laws of 1917, chapter 105, § 4, p. 351; Laws of 1921, chapter 64, § 2, p. 198; Laws of 1929, chapter 134, § 1, p. 351; Laws of 1939, chapter 58, § 1, p. 171; Laws of 1951, chapter 235, § 1, p. 742. From 1917 until the 1951 amendment, there was no reference to fire-fighting costs in the first paragraph of the act. Instead, the provision for such costs was linked with the costs of abatement in the second paragraph and made dependent upon a

refusal, neglect, or failure to abate the fire hazard. For purposes of clarification, I quote the 1939 version of the slash statute:

"Any land in the State of Washington covered wholly or in part by inflammable debris created by logging or other forest operations, land clearing, and/or right of way clearing and which by reason of such condition is likely to further the spread of fire and thereby endanger life or property, shall constitute a fire hazard, and the owner or owners thereof and the person, firm or corporation responsible for its existence are required to abate such hazard. Nothing in this section shall apply to lands for which a certificate of clearance . . . has been issued.

"If the owner or person, firm or corporation responsible for the existence of any such hazard shall refuse, neglect or fail to abate such hazard, the state supervisor of forestry may summarily cause it to be abated and the cost thereof and of any patrol or fire fighting made necessary by such hazard may be recovered from said person, firm or corporation responsible therefor or from the owner of the land on which such hazard existed by an action for debt and said costs shall also be a lien upon said land and may be enforced in the same manner, with the same effect and by the same agencies as the lien provided for in section 3 of chapter 105, Laws of 1917 (section 5806 of Remington's Revised Statutes; . . . ): *Provided,* That said summary action hereinbefore referred to may be taken only after twenty (20) days' notice in writing has been given to the owner or reputed owner of the land on which the hazard exists either by personal service on said owner or by registered letter addressed to said owner at his last known place of residence."

Thus, it is clear that, prior to the 1951 amendment, fire-fighting costs were imposed as the *sanction* for failure to remove the fire hazard.

It is to be further noted that, from 1917 until the 1939 amendment, notice from the state was required before liability for fire-fighting costs could be imposed. For example, the relevant portion of the second paragraph of the 1929 version of the slash statute reads as follows:

"If the owner or person, firm or corporation responsible for the existence of any such hazard shall refuse, neglect or fail to abate such hazard *as required by such notice,* the

state supervisor of forestry may summarily cause it to be abated and the cost thereof and of any patrol or fire fighting made necessary by such hazard may be recovered from said person, firm or corporation responsible therefor or from the owner of the land on which such hazard existed . . . ." (Italics mine.)

Under all of the acts *prior* to 1939, it is clear that there was to be no liability in the absence of notice from the state. However, in 1939, the act was amended so that the reference to notice no longer preceded the provision relating to fire-fighting costs, but was inserted in the *proviso* at the end of the second paragraph, so that it read:

". . . That said summary action hereinbefore referred to may be taken only after twenty (20) days' notice . . . ."

Does the twenty-day notice requirement pertain *only* to the costs of abatement, or does it also refer to the costs of patrol and fire fighting? The provision is ambiguous, especially when it is noted that the costs of patrol and fire fighting are linked together with the costs of abatement as in prior years, and when it is further noted that in all the prior acts notice was clearly required before the state could collect patrol and fire-fighting costs.

My review of the historical evolution of the slash statute establishes three significant points: (1) From 1917 until 1951, fire-fighting costs were imposed as a *sanction* for the failure to remove a fire hazard; (2) from 1917 until 1939, notice from the state was a condition precedent to liability for fire-fighting costs; (3) from 1939 until 1951, it is not clear whether notice from the state continues to be a condition precedent to liability for fire-fighting costs.

In 1951, the legislature amended the slash act by transposing the provision relating to liability for fire-fighting costs from the second to the first paragraph so that it would immediately follow the creation of the duty to abate. Thus, for the first time, the liability for fire-fighting costs was separated from the liability for the state's abatement costs. By virtue of this amendment, all ambiguity with respect to

the notice requirement in the 1939 statute was removed so that thereafter the state would be entitled to collect the costs of fire fighting *in the absence of notice.*

By the transposition of the provision for fire-fighting costs from the second to the first paragraph, did the legislature intend to do away with such provision *as a sanction* to be imposed only in the event of *failure* to remove the fire hazard and, instead, impose liability whenever the state has incurred fire-fighting costs made necessary by reason of the mere *existence* or *creation* of such hazard?

I think not. Traditionally, fire-fighting costs have been imposed as a sanction in the event of failure to remove the hazard. To say that the legislature intended to abandon the requirement that liability for fire-fighting costs be contingent upon failure to remove the hazard would result in the creation of liability without fault. If such a radical change in the law were intended by the legislature, surely it would have made its intention much clearer than we find it here.

Furthermore, I am convinced that the sole purpose of amending the statute in 1951 was to clarify the notice provision in the 1939 act so as to clearly enable the state to collect the costs of fire fighting in the absence of any notice.

I am of the opinion that RCW 76.04.370 imposes liability for fire-fighting costs only in the event of failure to remove the fire hazard. The purpose of the statute is to provide for the removal of a fire hazard and the sanction imposed for failure to remove such hazard is liability for fire-fighting costs. As noted by the trial court, the gravamen of the wrong is in permitting the hazard to remain.

The question remains whether the statute can be constitutionally applied to the facts of this case.

We must bear in mind that the creation of slash is a necessary incident of any logging operation. Mr. Griff Williams, field supervisor for the state department of natural resources, inspected the area prior to the fire and found that the logging operations were being conducted lawfully and in compliance with all existing fire regulations. The fire was of unknown origin and started while the logging

operations were in progress. Respondents fought the fire from its inception and its spread was not due to any negligence on their part.

The trial court found upon substantial evidence that the only practical means of removing the slash was by burning. However, RCW 76.04.170 requires a permit from the state before slash may be burned, and Mr. Griff Williams testified that if a permit had been applied for it would not have been issued. Thus, respondents could have avoided liability in this case only by performing an act which the state would not permit them to perform. With reference to the slash statute in the *Canyon* case, *supra*, we said:

" . . . This statute was obviously enacted on the premise that it was within the police power granted to the states. It is valid, if not unreasonable in application, or arbitrary, or the means adopted are not ill suited to accomplish the end sought. [Citations omitted] *The slash statute is designed to provide for the removal of a hazard created by logging or right-of-way clearing operations. The sanction imposed, in the event of failure to remove, is liability for fire-fighting costs* made necessary by reason of such hazard. The end sought—removal of the hazard—is within the police power of the state. . . ." (Italics mine.)

It is to be noted that my construction of the statute in the instant case is in accord with the language italicized above. The purpose sought by the statute is the removal of the hazard, and the means adopted to accomplish such purpose is the imposition of liability to the state for fire-fighting costs for failure to remove the hazard. It is obvious, under the facts of this case, that the means adopted are not reasonably well suited to accomplish the purpose or end sought. What could be more unreasonable or arbitrary than to impose liability to the state for fire-fighting costs because of respondents' failure to do an act which the state would not permit to be done?

I agree with the trial court's conclusion of law No. 3 to the effect that to so apply the statute to the facts in the case at bar would be unconstitutional. The state has failed to show that respondents have been remiss in any legal duty imposed upon them.

The conclusion I have reached with respect to the correct interpretation of the statute as applied to the facts of this case makes it unnecessary to consider the other questions discussed in appellant's briefs.

The judgment of the trial court should be affirmed.

WEAVER and OTT, JJ., concur with DONWORTH, J.