KILROY INDUSTRIES, a California corporation, et al., Plaintiffs,

v.

UNITED PACIFIC INSURANCE COMPANY, Defendant.

UNITED PACIFIC INSURANCE COMPANY, Plaintiff,

v.

KILROY INDUSTRIES, a California corporation, et al., Defendants.

Nos. CV 83–5156 MRP, CV 84–2370 MRP.

United States District Court, C.D. California.

March 1, 1985.

Michael A. Byrne, McKay, Byrne, Graham & Van Dam, Los Angeles, Cal., Douglas G. Houser, Douglas F. Foley, Bullivant, Houser, Bailey, Hanna, Pendergrass, Hoffman, O'Connell & Goyak, Vancouver, Wash., for plaintiffs.

Harvey R. Levine, Rick L. Bove, Shernoff & Levine, San Diego, Cal., for defendant.

## OPINION

PFAELZER, District Judge.

In the first of these two related actions, United Pacific Insurance Company ("United") brought suit against Kilroy Industries, Sea-Tac Properties, and John Kilroy (collectively referred to as "Kilroy") and in the second, Kilroy filed suit against United. Subsequently, United and Kilroy filed cross-motions for summary judgment which came on for hearing on July 23, 1984 before the Honorable Mariana R. Pfaelzer.

### I. BACKGROUND

These cases arise out of an insurance claim submitted by Kilroy to United under a $50,000,000 "Business Protection Insurance Policy" ("Policy"). The Policy provides liability and property insurance cover-

age for several properties owned by Kilroy in California and Washington. The property insurance covers loss of income as well as damage to Kilroy's property.

Kilroy is a real estate developer and owner of an eleven story office building in Seattle, Washington ("Sea-Tac"). Construction on Sea-Tac began in April 1978 and was completed in December 1979. Soon thereafter, tenants began to occupy office space in the building. At approximately the same time that the tenants began to take occupancy, Kilroy became aware of problems with the construction of the building, and, as a result, did not make its final progress payment to its general contractor, Baugh Construction Company ("Baugh"). On June 11, 1980, Baugh filed suit in King County, Washington to foreclose its construction lien on the building. On July 20, 1980, Kilroy answered Baugh's complaint and counterclaimed against Baugh and others alleging breach of contract. Kilroy and Baugh settled their claims on or about November 14, 1983.

Because of the controversy over the alleged structural problems with Sea-Tac, the King County Building Department conducted a "load test" in July 1981 and determined that the building was safe for occupancy. Thereafter, tenants continued to occupy the building and by August 1982, the building had attained a 48.5% occupancy rate.

On March 31, 1982, United issued its Business Protection Insurance Policy to Kilroy. Among the buildings covered under the Policy was Sea-Tac.

On August 13, 1982, the Building and Land Development Division of the Office of the Zoning and Subdivision Examiner of King County, Washington issued an order that Sea-Tac be vacated within sixty days. The order was based on the Division's determination that the building would be unsafe in the event of an earthquake. Following receipt of the order, Kilroy immediately began to relocate the Sea-Tac tenants.

In May 1983, Kilroy contacted United concerning its claim for income reduction from Sea-Tac and in June 1983, Kilroy submitted a formal claim for income reduction to the Robert Harris Agency in Newport Beach, California, the agency through which it purchased the Policy. The claim totalled approximately $6,000,000.00. With the formal claim, Kilroy also officially notified United of the then pending litigation between Kilroy and Baugh.

On July 22, 1983, United filed a complaint for declaratory relief in the Superior Court, King County, Washington asking the court to find that Kilroy's claim for income reduction was not covered under the Policy. On August 9, 1983, Kilroy filed suit against United in the United States District Court for the Central District of California alleging, *inter alia,* that United had breached its duty of good faith and fair dealing because it had denied Kilroy's claim for income reduction in bad faith and had filed the declaratory relief action in Washington. On August 10, 1983, Kilroy filed a petition for removal of United's declaratory relief action from the King County Superior Court to the United States District Court for the Western District of Washington. Subsequently, on March 22, 1984, the declaratory relief action filed by United was transferred from the Western District of Washington to the United States District Court for the Central District of California and thereafter was joined with the Kilroy action.

In May 1984, United filed this motion for summary judgment arguing that the Policy excludes Kilroy's claim for income reduction, that United did not act in bad faith when it rejected Kilroy's claim for income reduction and that Washington law applies in construing the rights of the parties. Kilroy also moved for summary judgment arguing that the Policy provides coverage for the income reduction claim, that the exclusions relied on by United to deny coverage do not relate to Kilroy's claim for income reduction, and that California law applies in construing the rights of the parties.

The Court, having considered the papers filed and the arguments of counsel, now grants Kilroy's motion for summary judgment with respect to the issue of whether

.its claim for income reduction is covered under the policy, and with respect to the issue of which state's law will apply to Kilroy's bad faith claims. However, there are genuine issues of material fact in dispute concerning Kilroy's allegations of bad faith denial of coverage by United. For this reason, summary judgment is denied as to that claim.

## II. DISCUSSION

### A. *Summary Judgment*

Summary judgment is appropriate when the court finds that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Ferguson v. Flying Tiger Line, Inc.*, 688 F.2d 1320, 1322 (9th Cir.1982). In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion. *Deukmejian v. United States Postal Service*, 734 F.2d 460, 462 (9th Cir. 1984). Summary judgment may be inappropriate in a contract case if there is a dispute over a material fact necessary to interpret the contract. *See National Union Fire Insurance v. Argonaut Insurance Co.*, 701 F.2d 95, 97 (9th Cir.1983) (applying California law).

In this case, there is no dispute between Kilroy and United about the material facts as they relate to the issue of whether Kilroy's claim for income reduction is covered under the Policy. The only disagreement between the parties is as to the construction of the Policy which is a question of law. *Fuller v. Equitable Savings and Loan Association*, 718 F.2d 951, 952 (9th Cir.1983); *Pacific Indemnity Co. v. Bloedel Timberlands Development, Inc.*, 28 Wash.App. 466, 624 P.2d 734, 836 (1982); Couch, *Couch on Insurance Second* § 15:3 (rev. ed. 1984). Thus, that issue is appropriate for summary adjudication.

In addition, the parties dispute the issue of whether California or Washington law applies to Kilroy's bad faith claims. Choice of law problems are also questions of law; thus, that issue is also ripe for summary adjudication.

### B. *United's Declaratory Judgment Action*

#### 1. *Choice of Law*

A threshold choice of law problem arises in this case because two states' laws are potentially involved. California is the state where the contract was negotiated and executed, where many of the buildings covered under the Policy are located, where Kilroy is incorporated and has its principal place of business, and where Kilroy is likely to collect for any claims made under the policy. Washington is the state where United is incorporated and has its principal place of business, and where Sea-Tac is located. Because jurisdiction is based on diversity, the Court must determine the applicable law under California's choice of law rules. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

The fact that more than one state's law is involved in a case does not inevitably present a choice of laws problem. "There is obviously no problem where the laws of the two states are identical." *Hurtado v. Superior Court*, 11 Cal.3d 574, 580, 114 Cal.Rptr. 106, 109, 522 P.2d 666, 669 (1974). That is the case here with respect to the construction and interpretation of the Policy, although not with respect to the bad faith claims.

California and Washington law are virtually indistinguishable with respect to the principles governing the construction of insurance contracts. In both states, the construction of an insurance policy is a question of law, *Beaumont, Gribin-Von Dyl Management Co. v. California Union Insurance Co.*, 63 Cal.App.3d 617, 622, 134 Cal.Rptr. 25, 27 (1976); *Pacific Indemnity*, 28 Wash.App. at 468, 624 P.2d 734, and, in construing the policy, the Court's task is to ascertain the intent of the parties. *Price v. Zim Israel Navigation Co., Ltd.*, 616 F.2d 422, 427 (9th Cir.1980) (applying California law), *Allstate Insurance v. Neel*, 26 Wash. App. 722, 612 P.2d 6 (1980). Both states also adhere to the general rule that "where a clause in an insurance policy is ambigu-

ous, the meaning and construction most favorable to the insured must be applied, even though the insurer may have intended another meaning." [1] *Dairyland Insurance Co. v. Ward*, 83 Wash.2d 353, 517 P.2d 966 (1974) (en banc). *See also Price*, 616 F.2d at 422; *Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966); *Beaumont*, 63 Cal.App.3d at 617, 134 Cal.Rptr. 25; *Witherspoon v. St. Paul Fire and Marine Insurance Co.*, 86 Wash.2d 641, 548 P.2d 302 (1976). In both states, this general rule is applied with particular force to exclusionary clauses. *Beaumont*, 63 Cal.App.3d at 623, 134 Cal.Rptr. 25; *State Farm Mutual Automobile Insurance Co. v. Partridge*, 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973); *West American Insurance Co. v. State Farm Mutual Insurance Co.*, 80 Wash.2d 38, 491 P.2d 641 (1971); *Safeco Insurance Company v. McManemy*, 72 Wash.2d 211, 432 P.2d 537 (1967).

In both states, "the principles governing the determination of whether an ambiguity exists are identical." [2] Similarly, the rules governing the construction and application of exclusions under an all-risk policy are essentially the same. *See Price*, 616 F.2d at 422; *Holz Rubber Co. Inc. v. American Star Insurance Co.*, 14 Cal.3d 45, 120 Cal. Rptr. 415, 533 P.2d 1055 (1975); *Dickson v. United States Fidelity and Guaranty Co.*, 77 Wash.2d 785, 466 P.2d 515 (1970); *Rior-*

*dan v. Commercial Travelers Mutual Insurance Co.*, 11 Wash.App. 707, 525 P.2d 804 (1974). Accordingly, there being no conflict between Washington and California law regarding the construction of insurance policies, the Court is not required to make a choice between the laws of the two states to decide this issue.

### 2. *Kilroy's Claim for Income Reduction*

United argues that Kilroy's claim for income reduction is excluded under the terms of the Policy. United points to the "Property Protection" section of the Policy where, under the heading "What *We* Do Not Protect", it states: *"We* will not protect against *loss* from ..." [3] and then lists fifteen exclusions each contained in a separate paragraph. If loss results from the occurrence of any of the fifteen listed events or acts, then that loss is not covered under the policy. It is United's position that loss as defined in the Policy includes income reduction. Thus, United argues that since Kilroy's claim for income reduction resulted from events or acts which fall within four of the Policy's exclusions, the claim is not covered under the Policy.

Kilroy, conversely, contends that loss as defined in the Policy does not include income reduction. According to Kilroy, the Policy covers two separate types of claims: claims for property damage and claims for

1. That there is no conflict between Washington and California law as it applies to the construction of insurance contracts is not surprising since well settled rules of contract construction are involved here. *See Mutual Insurance Co. v. Hurni Packing Co.*, 263 U.S. 167, 174, 44 S.Ct. 90, 68 L.Ed. 235 (1923).

   It has been almost the unanimous holding of all courts that insurance contracts must be liberally construed in favor of a policy holder or beneficiary thereof, wherever possible, and strictly construed against the insurer in order to afford protection which the insured was endeavoring to secure when he applied for the insurance.... Thus, if the meaning of the words employed is doubtful or uncertain, or if for any reason an ambiguity exists either in the policy as a whole or in portions thereof, the insured should have the benefit of a favorable construction in such instance.

2. Courts must construe the policy as a whole. *See Holz Rubber Co., Inc. v. American Star Insurance Co.*, 14 Cal.3d 45, 56, 120 Cal.Rptr. 415, 521, 533 P.2d 1055, 1061 (1975); *Witherspoon*, 86 Wash.2d at 641, 548 P.2d 302. A policy is ambiguous if the court finds that the language is susceptible to different interpretations. *See State Farm Mutual Auto Insurance Co. v. Elkins*, 52 Cal.App.3d 534, 538, 125 Cal.Rptr. 139, 141 (1975); *Farmers Insurance Co. v. United States Fidelity and Guaranty Co.*, 13 Wash.App. 836, 537 P.2d 839 (1975). Where the court finds two alternative interpretations, both must be sensible and reasonable. *See Beaumont*, 63 Cal. App.3d at 617, 134 Cal.Rptr. 25; *Truck Insurance Exchange v. Merrell*, 23 Wash.App. 181, 596 P.2d 1334, 1337 (1979).

3. In the Policy, terms that are defined specifically in the Policy appear in bold face. In this Opinion, those words are italicized.

income reduction. Kilroy argues that the exclusions in the Policy apply only to claims for property damage.

■ The first step in the resolution of the dispute between the parties regarding the Policy is the determination of whether the terms at issue here are clear and unambiguous. If, from the language employed, the Court can determine the plain meaning of the Policy, then the Court must hold the parties to their contract. *St. Paul Fire and Marine Insurance Co. v. Coss*, 80 Cal.App.3d 888, 145 Cal.Rptr. 836 (1978); *Truck Insurance Exchange v. Merrell*, 23 Wash.App. 181, 596 P.2d 1334, 1337 (1979). On the other hand, as stated, if the Court finds that the language in the Policy is ambiguous, then "the meaning and construction most favorable to the insured must be applied." *Dairyland*, 517 P.2d at 966.

■ In determining whether a term in an insurance policy is clear, the Court must look to the policy as a whole. *See Holz Rubber*, 14 Cal.3d at 56, 120 Cal.Rptr. 415, 533 P.2d 1055; *Witherspoon*, 86 Wash.2d at 641, 548 P.2d 302; Appleman, *Insurance Law and Practice* § 7403 (1976). The Court must also consider the subject matter and objective of the policy. *Harris v. Glens Falls Insurance Co.*, 6 Cal.3d 699, 100 Cal.Rptr. 133, 493 P.2d 861 (1972); *Leija v. Materne Brothers Inc.*, 34 Wash.App. 825, 664 P.2d 527 (1983). An insurance policy is ambiguous if the meaning of the terms is uncertain or "capable of being understood in more than one manner." *Farmers Insurance Co. v. United States Fidelity and Guaranty Co.*, 13 Wash.App. 836, 537 P.2d 839 (1975), *citing Rydman v. Martinolich Shipbuilding Corp.*, 13 Wash. App. 150, 153, 534 P.2d 62 (1975). The two different interpretations, however, must be "sensible and reasonable." Couch, *supra*, at § 15:74. The Court cannot "under the guise of construction ... forc[e] from plain words unusual and unnatural meanings." *Bergholm v. Peoria Life Insurance Co.*,

284 U.S. 489, 492, 52 S.Ct. 230, 231, 76 L.Ed. 416 (1932). Finally, in making the determination as to the existence of an ambiguity, courts may consider whether alternative or more precise language would have clarified the matter beyond question. Appleman, *supra*, at § 7403.

■ Applying these principles to the policy provisions at issue here, the Court has no difficulty in reaching the conclusion, as the parties undoubtedly must also have done, that the provisions are ambiguous.

The Property Protection section of the Policy begins by stating what the Policy protects. "We protect against loss from injury to your property including resulting income reduction." The next paragraph begins, "What We Do Not Protect" and continues "we will not protect against *loss* to[.]" By adding the phrase "including resulting income reduction" in the coverage section of the Policy, but leaving it out of the exclusion section of the Policy, United has created an ambiguity as to whether the term loss in the exclusion section includes income reduction, and therefore, whether the exclusions apply to claims for income reduction or merely to claims for property damage.

The ambiguity is exacerbated by the fact that the terms "loss" and "income reduction" are separately defined in the Policy. Loss is defined as "reduction in asset financial value, or increase in expense or financial liability." Income reduction is defined as *"loss* of expected income resulting from necessary interruption of business caused by injury or harm that impairs value or usefulness of *your* property." Although the definition of income reduction includes the term loss, substituting the Policy's definition of loss for the word "loss" in the definition of income reduction creates a nonsense sentence.[4] Moreover, the definition of "loss" does not specifically include income reduction and the Court would be hard put to find that income reduction as

---

**4.** The sentence would read "Reduction in asset financial value, or increase or expense or financial liability of expected income resulting from

necessary interruption of business caused by injury or harm that impairs value or usefulness of *your* property."

defined in the Policy is a "reduction in asset financial value or increase in expense or increase in financial liability"—the definition of loss under the Policy.

In *Compagnie Des Bauxites De Guinee (CBG) v. Insurance Company of North America (INA)*, 554 F.Supp. 1075 (W.D. Penn.1983), cited by both United and Kilroy in support of their respective positions, the Court faced a situation similar to the one presented here. The policy at issue insured CBG against "loss resulting directly from necessary interruption of business caused by damage to or destruction of real or personal property...." The policy then listed fifteen exclusions under the heading "This policy does not insure against: ... [.]" Included among the exclusions was "(a) Mechanical Breakdown, unless other accident covered hereunder ensues, and then this policy shall cover the ensuing loss only [.]" CBG filed a claim for losses resulting from an accident which occurred when a piece of equipment failed and collapsed. CBG did not file a claim for damage to the equipment. INA argued that the accident was a result of a mechanical breakdown and that all losses resulting from the accident were excluded under the policy.

The court found that the mechanical breakdown exclusion did not contain language limiting losses *resulting from* mechanical breakdown in contrast with two other exclusions which specifically excluded "loss by" or "loss resulting from" the stated act or event. The court then held that:

> It is obvious to this Court that the insurance company clearly manifested its intent with respect to the scope of the exclusions in the language it chose in writing the exclusions. Had the insurance company intended to exclude *loss* resulting from or caused by a mechanical breakdown, it could have said so clearly and simply, either by stating: "2. This policy does not insure against business interruption losses resulting from ..." or by stating in paragraph 2(a) "losses

caused by or resulting from mechanical breakdown...."
> The plain meaning of the very words chosen by the insurer ... indicates the clear intent of the insurer to cover business interruption losses caused by damage to personal property. Once a business interruption loss results from damage to personal property, however that damage is caused, even if by a mechanical breakdown, there is coverage under the terms of the policy as the insurer has written it.

*Compagnie*, 554 F.Supp. at 1078–79.

In this case, the same reasoning holds true. If United had intended to exclude a claim for income reduction resulting from the enumerated exclusions, it could have done so clearly and unambiguously by stating "we do not protect from loss including income reduction resulting from...." Alternatively, United could have included income reduction specifically under the definition of loss. The fact that income reduction is specifically included in the coverage section of the Policy, but then absent from the exclusion section, coupled with the fact that the definition of loss does not clearly include income reduction, requires the conclusion that, at the very least, the Policy is ambiguous as to whether the exclusions apply to claims for income reduction.

The Court's finding that the Policy is ambiguous is reinforced by United's own internal memorandum. United's "Business Protection Insurance Policy Guide for Claims People" states in paragraph eight:

> 8. There are a lot of new terms, especially under the liability protection starting on page 3–1. How do we interpret these?
> It has been our experience that there are a minimum of definitions in the policy and that the underwriters who wrote the policy did not have specific definitions in mind at the time that the policy was written. For example, if you read exclusion number 4, it would probably not make sense to you. Grammatically, it is very difficult to understand what is intended ... We will just have to take the

claims as they come up.... As I understand it, there are no written background notes that can assist us in our interpretation of this terminology.

Although the example given refers to the liability protection section of the Policy, the statement refers generally to "new terms." As United admits, "income reduction" is just such a new term.

Finally, it is clear that United has also recognized that the loss/income reduction distinction is ambiguous. In July 1982, United modified its Business Protection Insurance Policy by eliminating separate coverage for income reduction. The revised policy states "we protect against loss from injury to your property." Significantly, the policy defines "loss" to mean "decrease in assets financial value, *decrease in income*, increase in expense or increase in financial liability." (Emphasis added.) United has now supplied more precise language to define that which the policy covers. Appleman, *supra*, at § 7403. Had this new policy language been in effect at the time Kilroy filed its claim, there would be no question but that the exclusions would have applied to it.

The Court's finding of ambiguity triggers the application of the principle of policy interpretation which requires the adoption of, "that construction ... which permits recovery, rather than one which would deny coverage." Appleman, *supra*, at § 7401. *Gray*, 65 Cal.2d at 263, 54 Cal. Rptr. 104, 419 P.2d 168; *Dairyland*, 83 Wash.2d at 353, 517 P.2d 966. The rationale for this rule of construction is that insurance policies are usually printed forms carefully prepared by experts employed by the insurer. Since the language of the policy is written by the insurer, it is both fair and reasonable to construe the insurer's own words most strongly against it. In addition, the Policy should be construed in light of the purpose of the contract, that is, the purpose of providing protection. Couch, *supra*, at § 1578, 1581. *Holz Rubber*, 14 Cal.3d at 60, 120 Cal.Rptr. 415, 533 P.2d 1055.

United argues that the ambiguity rule only applies to contracts of adhesion where the insured has little or no bargaining power. Because Kilroy "negotiated" the Policy with United and because Kilroy is an experienced developer, United contends that the Policy is not a contract of adhesion and that the ambiguity rule should not be applied. In support of its argument, United cites two circuit court decisions: *Eastern Associated Coal Corp. v. Aetna Casualty and Surety Co.*, 632 F.2d 1068 (3d Cir. 1980), and *Eagle Leasing Corp. v. Hartford Fire Insurance Co.*, 540 F.2d 1257 (5th Cir.1976).

Neither of these two cases advances United's position. First, in *Eastern*, the court applied Pennsylvania law and in *Eagle*, the court applied Missouri law. No cases have been brought to the Court's attention which hold that under either California or Washington law, the ambiguity rule applies *only* to contracts of adhesion. Further, in *Eastern*, the parties were found to be in an "equal" bargaining position because Eastern had an insurance broker who selected the policy forms, prepared the policies, and sent them to the insurance companies for execution. In *Eagle*, the court noted that the plaintiff company was an "immense corporation" and found it significant that the policy was not on the insurance company's printed form, but had been prepared especially for the corporation. None of these facts are present in this case.

In sum, the Court finds that the policy was ambiguous with regard to whether the exclusions apply to Kilroy's claim for income reduction. Applying the rule that ambiguities are construed in favor of the insured and in favor of coverage, the Court adopts Kilroy's interpretation of the Policy, that is, that the exclusions do not apply to claims for income reduction.

### 3. *The Policy's Exclusions*

As an alternate ground for its decision, the Court finds that even if the exclusions in the Policy had been found to be applicable to Kilroy's claim for income reduction,

none of the exclusions relied upon by United would have furnished a basis for the denial of Kilroy's claim. Both the parties and the Court agree that this Policy is an "all-risk" policy under which "recovery will be allowed for all fortuitous losses not resulting from misconduct or fraud, *unless the policy contains a specific provision expressly excluding the loss from coverage*." (Emphasis in original.) *C.H. Leavell & Co. v. Fireman's Fund Insurance Co.*, 372 F.2d 784, 787 (9th Cir.1967). The rules described in part II(B)(2) above, regarding the construction of insurance contracts generally, apply as well to the construction of exclusionary clauses. However, the rule that ambiguous clauses must be construed in favor of the insured applies with even greater force to exclusionary clauses. "It has long been particularly true that provisos, exceptions, and exclusions in an insurance policy will be strictly construed against the insurer." *Beaumont*, 63 Cal.App.3d at 623, 134 Cal.Rptr. 25. *See also Leavell*, 372 F.2d at 784; *Witherspoon*, 86 Wash.2d at 641, 548 P.2d 302; *Dickson*, 77 Wash.2d at 785, 466 P.2d 515. Further, "where the insuring clause of a policy clearly covers a risk, and a subsequent limiting clause does not clearly exclude it, the risk will be deemed to be covered by the policy." Appleman, *supra*, at § 7403; *see also Holz Rubber*, 14 Cal.3d at 37, 120 Cal.Rptr. 415, 533 P.2d 1055.

United relies in the main on four exclusions in the Policy and on the general principle that nonfortuitous events are not covered by an all-risk policy. The Court will consider each of these in turn in light of the rules set forth above.

### a. *The Faulty Design or Workmanship Exclusion*

Both United and Kilroy agree that the income reduction suffered by Kilroy was caused primarily by faulty workmanship. As described earlier, the Policy issued to Kilroy contained a list of exclusions under the heading "*We* will not protect for *loss* from[.]" The exclusions are not numbered, lettered or otherwise identified except that each exclusion is contained in a separate paragraph. The eighth paragraph excludes coverage under the Policy for loss from:

Faulty design, materials or workmanship; inherent vice, rust and corrosion, mildew, wet or dry rot; contamination; vermin, insects or animals; smog, smoke, fumes or vapors from agricultural or industrial operations; shrinkage, evaporation, loss of weight, change in flavor, color, texture of finish; change in temperature or humidity.

Without more, the plain wording of the exclusion would appear to apply to Kilroy's claim. However, attached to the policy are a series of special endorsements which modify the terms of the printed Policy. The third of these endorsements states:

THE 8TH PARAGRAPH UNDER "WE WILL NOT PROTECT FOR LOSS FROM" IS DELETED & REPLACED BY THE FOLLOWING:

EARTH MOVEMENT INCLUDING, BUT NOT LIMITED TO LANDSLIDE, MUDFLOW, EARTH SINKING, RISING OR SHIFTING; BUT WE DO PROTECT AGAINST LOSS FROM EARTHQUAKE, INCLUDING ANY OF THE EARTH MOVEMENTS MENTIONED ABOVE WHEN THEY OCCUR AS A DIRECT RESULT OF AN EARTHQUAKE.

WITH RESPECT TO EARTHQUAKE "OCCURRENCE MEANS ALL EARTHQUAKE SHOCKS OCCURING WITHIN A SEVENTY–TWO HOUR PERIOD."

Kilroy contends that because of this modification, loss caused by faulty design or workmanship is not excluded under the Policy. The Court agrees with this contention.

United argues that it is clear that the endorsement was intended to relate to a different exclusion, namely exclusion ten— earthquakes and earth movement. According to United, reading the endorsement to apply to the faulty design and workmanship exclusion is strained and illogical and would result in a policy with two contradictory clauses. Implicit in its argument is that a clerical mistake was made. It is also United's position that Kilroy unilaterally

numbered blocks of words in the Policy and that because exclusions four, five, and six all concern fraud, they should be considered as one exclusion. United's new numbering system would make the earthquake exclusion the eighth paragraph.

United's position is untenable. First, numbering the exclusions was not Kilroy's idea, but United's. United's endorsement specifically referred to the "8th paragraph" and any but the most strained reading of the Policy requires the conclusion that the eighth paragraph contains the faulty design and workmanship exclusion. Second, the mistake in the endorsement is United's and United cannot now complain about any confusion its error has caused.

■ Thus, the Court finds as a matter of law that the special endorsement unambiguously deletes the faulty design and workmanship exclusion from the Policy. If, however, the endorsement is viewed as ambiguous as to whether the parties intended to cover loss from faulty design and workmanship, the same result must be reached. The Court must construe the exclusion against United and in favor of Kilroy.

### b. *The Enforcement of Any Ordinance Exclusion*

■ Before discussing this exclusion specifically, it is important to note that in an all-risk policy, where the "efficient cause" of the loss is a covered risk under the policy, coverage cannot be defeated merely because an excluded risk contributed to the loss. *Safeco Insurance Company v. Guyton*, 692 F.2d 551 (9th Cir.1982); *Arata v. California-Western States Life Insurance Co.*, 50 Cal.App.3d 821, 123 Cal. Rptr. 631 (1975); *Dickson*, 77 Wash.2d at 792, 466 P.2d 515. The efficient cause is "the one that sets the others in motion ... (even) though the other causes may follow it, and operate more immediately in producing the disaster." *Couch, supra*, at § 1466. Because both parties agree that faulty workmanship is the efficient cause of the loss, neither the enforcement of any ordinance exclusion nor any other exclusion can be used to defeat coverage. This

would be true even if the Court accepted United's interpretation of this exclusion.

■ United contends that the exclusion precludes Kilroy's claim for income reduction because the income lost was proximately caused by the King County order to vacate (enforcing the King County Code). It is difficult for United to maintain this position now because it earlier communicated a different interpretation of the exclusion to Kilroy. In a memorandum from United's agent William L. Pope to the Robert Harris Agency, dated November 5, 1982, Mr. Pope stated:

United Pacific Reliance has confirmed to us that this exclusion applies only to the cost of improvements for modifications required by the operation of ordinances or laws. The exclusion does not apply to physical injury to real or personal property or resulting loss of income that may result from the construction operations themselves.

United now argues that the memorandum means only that Sea-Tac was still covered by the Policy while repairs were being made. Coupled with its interpretation of the exclusion as it relates to Kilroy's claim, this interpretation of the clause would render such insurance a nullity. United's position would exclude all loss which occurred while the ordinance was being enforced, that is, while repairs were being made. Presumably, once the building was repaired, coverage would resume. Such an interpretation is untenable. The only reasonable interpretation is that the enforcement of any ordinance exclusion applies only to the cost of improvements or modifications required by the operation of ordinances or laws, and that the exclusion does not bar Kilroy's claim for income reduction in this case.

### c. *The Inherent Defect Exclusion*

United also contends that Kilroy's claim for income reduction is excluded by the seventh exclusion:

Wear and tear; marring or scratching; deterioration; inherent or latent defect; failure or mechanical breakdown of ma-

chinery including *loss* from centrifugal force.

Kilroy has admitted both in this case and in its suit against Baugh that it became aware of certain structural defects in Sea-Tac before United issued the Policy to Kilroy. United argues that these structural defects were "inherent" and that Kilroy's claim for income reduction resulted from the defects. Therefore, according to United, Kilroy's claim is excluded by the inherent defect exclusion.

Again, it is important to note that both parties agree that faulty workmanship is the efficient cause of the damage to Sea-Tac which resulted in Kilroy's claim. Because this Court has found that loss from faulty workmanship was not excluded under the Policy, the inherent defect exclusion should not be allowed to defeat coverage.

▮ United, however, argues that the faulty workmanship and the inherent defect are the same efficient cause, that is, that the inherent defect is identical and indistinguishable from the faulty workmanship. They are both efficient causes; thus, the inherent defect exclusion bars Kilroy's claim. Such logic is not compelling. Absent faulty workmanship, there would not have been defects, inherent or otherwise. The two causes are not the same efficient cause and Kilroy's claim does not fall within the inherent defect exclusion.

### d. *Settling, Shrinking, Cracking Exclusion*

United has also perfunctorily asserted that the ninth exclusion precludes Kilroy's claim. The exclusion bars coverage for loss resulting from:

Settling, shrinking, cracking, bulging or expansion of driveways, sidewalks, swimming pools, pavement, foundations, walls, floors, roofs and ceilings.

United never develops this argument either in its moving papers or in its reply papers. Thus, the Court finds, first, that United has failed to meet its burden of establishing that this exclusion applies to this claim, and, second, that settling,

shrinking, cracking, etc., does not appear to have been the efficient cause of the damage to Sea-Tac. This exclusion, therefore, does not afford a ground for the denial of coverage for Kilroy's claim.

### e. *Fortuity*

▮ Under all-risk insurance policies, losses which are not fortuitous are not covered because the risk feature inherent in insurance is lacking. *Dow Chemical Co. v. Royal Indemnity Co.*, 635 F.2d 379, 386 (5th Cir.1981). United maintains that Kilroy's loss of income from faulty workmanship began prior to the effective date of the insurance contract. Therefore, United continues, Kilroy's losses were not fortuitous but inevitable.

United's argument implies that the faulty workmanship which occurred prior to the issuance of the Policy, and about which Kilroy had knowledge, made it inevitable that a seismic problem would develop, an order to vacate would issue and Kilroy would lose income thereby. This argument is made despite the fact that United never disputes Kilroy's assertion that the order to vacate was based upon defects unknown to Kilroy at the time the Policy issued. Suffice it to say that the fact that at one time Kilroy lost income on account of one kind of faulty workmanship does not make it inevitable that an order to vacate based on another kind of faulty workmanship will later issue or that income will be lost because of it. Since Kilroy's claim is for income reduction only *after* it received the order to vacate, Kilroy's claim is for a loss which was clearly fortuitous.

In *Compagnie Des Bauxites De Guinee v. Insurance Company of North America*, 724 F.2d 369 (3d Cir.1983) (CBG II), the court defined fortuity:

[W]e believe that the definition of a fortuitous event that Pennsylvania would adopt is that found in the Restatement of Contracts:

A fortuitous event ... is an event which *so far as the parties to the contract are aware*, is dependent on

chance. It may be beyond the power of any human being to bring the event to pass; it may be within the control of third persons; it may even be a past event, such as the loss of a vessel, *provided that the fact is unknown to the parties.*

Restatement of Contracts, § 291 comment a (1932) (emphasis added).

. . . .

We think it inappropriate to cause the insured to suffer a forfeiture by concluding, with the aid of hindsight, that no fortuitous loss occurred, when at the time the insurance took effect only a risk was involved so far as the parties were aware. (Citations omitted).

CBG II, 724 F.2d at 372.

■ Although the court in CBG II was applying Pennsylvania law, its reasoning is sound. The Court has been unable to identify either a California or a Washington case defining fortuity, but there appears to be no reason why both states would not adopt the Restatement and the Third Circuit definition. *See also Black's Law Dictionary,* 589 (5th ed. 1979) (defining fortuitous event as "[a]n event happening by chance or accident ... [a]n unforeseen occurrence, not caused by either of the parties, nor such as they could prevent."); *Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp.,* 579 F.2d 561 (10th Cir.1978); *Essex House v. St. Paul Fire & Marine Insurance Co.,* 404 F.Supp. 978 (S.D.Ohio 1975); *Millers Mutual Fire Insurance Co. v. Murrell,* 362 S.W.2d 868 (Tex.Civ.App.1962). Accordingly, this Court finds as a matter of law that Kilroy's loss of income was fortuitous because neither Kilroy nor United were aware of the defects which resulted in the order to vacate.

In sum, the Court finds that even if the exclusions in the Policy were applicable to Kilroy's claim for income reduction, none of the exclusions relied on by United in denying the claim are legally sufficient to warrant denial. In addition, Kilroy's loss of income was fortuitous and is covered by United's all-risk policy.

### C. *Kilroy's Remaining Claims*

Because the Court has found that Kilroy's claim for income reduction is covered by the Policy, it must now resolve the remaining questions posed by the parties in their cross-motions for summary judgment. United argues that this Court must apply Washington law to all of Kilroy's claims, and that, regardless of which state's law is applied, United did not engage in "bad faith conduct." Kilroy contends that California law governs its claims for "bad faith" against United, but does not move for summary judgment on the substance of its bad faith claims.

#### 1. *Summary Judgment—Choice of Law*

■ As stated, *see* Part II(B)(1), in deciding which state law governs, the Court applies California's choice of law rules, *Klaxon,* 313 U.S. at 487, 61 S.Ct. at 1020. In tort cases, the California courts engage in a three step analysis to resolve choice of law problems.[5] First, the Court must decide whether the laws of the states involved differ in any way. *Bernhard v. Harrah's Club,* 16 Cal.3d 313, 317, 128 Cal.Rptr. 215, 217, 546 P.2d 719, 721 (1976). If they do, the Court must then assess the interests of the two states "in having their respective laws applied." *Bernhard,* 128 Cal.Rptr. at 217, 546 P.2d 721. Finally, if the Court determines that the two states' interests conflict, the Court must determine which state's interest would be impaired to the greater degree if its law were not applied. This is the so-called "comparative impairment" approach. *Bernhard,* 128 Cal.Rptr. at 219, 546 P.2d 721.

5. United argues that the Court should decide the choice of law questions under Cal.Civ.Code § 1646 or under § 193 of the Restatement (Second), *Conflict of Laws.* Both Cal.Civ.Code § 1646 and § 193 of the Restatement address the question of which state's law should apply to the interpretation of a contract. Kilroy's claims, however, are tort claims. Therefore, California's comparative interests analysis provides the appropriate choice of law standard.

Kilroy's complaint for tortious breach of contract raises four claims: (1) tortious breach of the duty of good faith and fair dealing; (2) breach of fiduciary duties; (3) common law fraud; and (4) breach of statutory duties in violation of California Insurance Code § 790.03(h) ("§ 790.03(h)"). Neither party addresses the conflicts problem as it relates to the claims for breach of fiduciary duties and fraud, but instead both parties focus on Kilroy's bad faith claims. Accordingly, the Court will also focus on these claims in its analysis of the conflicts problem.

California recognizes the tort of bad faith failure to pay claims due under an insurance policy. *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973). Although the duty of the insurer to settle or pay claims in good faith is based on a covenant of good faith and fair dealing implied by the California courts in every contract, breach of the insurer's duty sounds in both contract and tort. *Gruenberg*, 108 Cal.Rptr. at 484, 510 P.2d 1032. The tort claim may subject insurance company defendants to actual and consequential damages, attorney's fees incurred in an effort to obtain payment under the policy, *Brandt v. Superior Court*, 85 Daily Journal D.A.R. 398 (January 28, 1985), and punitive damages. Attorney's fees incurred by the plaintiff in bringing a bad faith suit are not recoverable. *Austero v. Washington National Insurance Co.*, 132 Cal.App.3d 408, 182 Cal. Rptr. 919, 922 (1982), *citing Lowell v. Maryland Casualty Co.*, 65 Cal.2d 298, 54 Cal.Rptr. 116, 419 P.2d 180 (1966). Punitive damages are allowed only if the plaintiff can prove that the insurance company acted with "oppression, fraud, or malice." Cal.Civ.Code § 3294; *Austero*, 182 Cal. Rptr. at 925.

As a further protection for insureds, the California Insurance Code prohibits certain unfair and deceptive acts or practices in the insurance industry, including:

Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices:

(1) Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue.

2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

. . . .

5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

. . . .

13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

Cal.Ins.Code § 790.03(h).

In *Royal Globe Insurance Co. v. The Superior Court of Butte County*, 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329 (1972), the California Supreme Court held that a private litigant may bring an action to impose civil liability for violations of § 790.03(h). The Court also held that when "a private party ... bring[s] an action for an insurer's violation of subdivision (h) ... then a single violation knowingly committed is a sufficient basis for such an action." *Id.* 153 Cal.Rptr. at 849, 592 P.2d 329.[6] *See also Shernoff v. The Superior Court of*

---

**6.** The Court reasoned that the introductory language of § 790.03(h) was ambiguous, but that the Legislature must have intended to allow two alternative methods of proving a violation of the statute: (1) a showing that a prohibited act was *knowingly* committed on one occasion; or (2) if knowledge cannot be established, a showing that prohibited acts were performed with such frequency as to indicate a general business practice. In general, private litigants will opt to prove the former while the Insurance Commissioner will opt to prove the latter. *Royal Globe*, 153 Cal.Rptr. at 849. In this case, Kilroy must prove at trial either that United knowingly committed any of the acts prohibited by § 790.03(h) or that United commits them with "such frequency as to indicate a general business practice." § 790.03(h).

*Los Angeles County*, 44 Cal.App.3d 406, 410, 118 Cal.Rptr. 680, 682 (1975). The remedies available for violation of § 790.-03(h) are identical to those available for bad faith failure to pay or settle an insurance claim. *Compare Coleman v. Gulf Insurance Group*, 153 Cal.App.3d 706, 200 Cal. Rptr. 619, 625 (1984), *with Gruenberg*, 108 Cal.Rptr. at 489, 510 P.2d 1041.

Washington has not recognized the tort of bad faith failure to pay or settle an insurance claim. The Washington Supreme Court has found it unnecessary to determine whether such a claim would be cognizable under Washington law because the same conduct is actionable under Washington's Consumer Protection Act, RCWA § 19.86.020.[7] *Levy v. North American Company for Life and Health Insurance*, 90 Wash.2d 846, 586 P.2d 845 (1978). That Act imposes a duty of good faith and fair dealing on insurance companies. *Phil Schroeder, Inc. v. Royal Globe Insurance Co.*, 99 Wash.2d 65, 659 P.2d 509 (1983), *rev'd on other grounds*, 101 Wash.2d 830, 683 P.2d 186 (1984). An insured injured by a violation of the Consumer Protection Act may recover actual damages, attorney's fees, and punitive damages. RCWA § 19.-86.090.

■■■ It is with respect to punitive damages that Washington and California law differ significantly.[8] Absent statutory authorization, Washington does not allow punitive damages. *Steele v. Johnson*, 76 Wash.2d 750, 458 P.2d 889, 890 (1969); *Maki v. Aluminum Building Products*, 73 Wash.2d 23, 436 P.2d 186 (1968). The Consumer Protection Act provides for punitive damages, but limits the amount of damages to three times the amount of actual damages, but no more than $1,000.00.

RCWA § 19.86.090. Calif.Civ.Code § 3294 permits punitive damages "[i]n an action for breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice...." More importantly, California does not limit the amount of punitive damages recoverable for either tortious breach of the duty of good faith and fair dealing, or for violations of § 790.03(h). Therefore, it is urged that the Court must resolve the conflicts problem in order to determine whether Washington's law limiting punitive damages or California's law providing unlimited punitive damages applies to Kilroy's bad faith claims. Upon analysis, however, the "conflicts problem" is in fact purely illusory.

If Kilroy had brought only the claim for tortious breach of the duty of good faith and fair dealing, then this Court would be forced to resolve the punitive damages conflict. But, Kilroy has also brought a claim under the California Insurance Code. In order to transact insurance business in California, an insurance company must be "admitted" in the state and must obtain a certificate of authority from the Insurance Commissioner. Cal.Ins.Code § 700. United clearly transacts business in California[9], and the Court must presume therefore that it holds a valid certificate of authority. Once an insurance company obtains a certificate, the Insurance Code requires that:

> the holder (of the certificate) shall continue to comply with the requirements as to its business set forth in this Code and in the laws of this State.

Cal.Ins.Code § 700.

Thus, United may be sued by a California insured for violation of the Insurance Code and is subject to all of the remedies which

---

**7.** RCWA 19.86.020 states:
   Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

**8.** The other difference between California and Washington law is that Washington's Consumer Protection Act provides attorney fees for successful plaintiffs, RCWA § 19.86.090, while California law precludes an award of attorney fees

in bad faith suits. *Austero*, 132 Cal.App.3d 408, 182 Cal.Rptr. 919, 922, *citing, Lowell v. Maryland Casualty Co.*, 65 Cal.2d 298, 302, 54 Cal. Rptr. 116, 419 P.2d 180 (1966).

**9.** Kilroy's policy is proof of the fact that United transacts business in California. The policy was issued to a California business through a California insurance agency, and the policy was negotiated and executed in California.

California law affords, including punitive damages. *See Beckham v. Safeco Insurance Co.*, 691 F.2d 898 (9th Cir.1982) (Washington insurance company subjected to suit for violation of § 790.03(h) by third party claimant under a California insured's policy). There is no conflict of laws problem with respect to the statutory claim because there is only one state's law involved. The claim arises under California law and United has, by doing business in California, agreed to abide by and subject itself to the California Insurance Code.

A claim for violation of § 790.03(h) is co-extensive with a tort claim for breach of the implied duty of good faith and fair dealing. *See Royal Globe*, 153 Cal.Rptr. at 849, 851–52 (Richardson, J. concurring and dissenting); *Karlin v. Zalta*, 154 Cal. App.3d 953, 974, 201 Cal.Rptr. 379, 390 (1984). At issue is the same duty whether imposed by statute or by contract. The elements of the two causes of action are identical, the standards for determining liability are identical, and the remedies available are identical. Thus, because Kilroy may proceed under California law with its claim for violation of § 790.03(h), it is unnecessary for this Court to reach the conflict of law problem posed by the parties.

### 2. *Summary Judgment—Substantive Claims*

■ United also moved for summary judgment on the substantive allegations of bad faith arguing that regardless of which state's law applies, United did not act in bad faith. The Court's ruling that California law applies to Kilroy's bad faith claim in no way is intended to imply that United actually violated § 790.03(h); there are still many factual issues in dispute as to whether indeed United acted in bad faith and if it did, whether it acted with oppression, fraud, or malice. Thus, summary judgment with respect to Kilroy's § 790.03(h) claim is inappropriate at this time. *See Beckham*, 691 F.2d at 902–03.

For the reasons stated herein,

IT IS ORDERED that:

1. United's motion for summary judgment is denied;

2. Kilroy's motion for summary judgment is granted in part, and denied in part. The motion is granted with respect to the question of whether Kilroy's claim for income reduction is covered under the Policy. It clearly is. The motion is also granted with respect to the question of whether the exclusions in the Policy apply to its claim. They do not. Finally, the motion is granted with respect to whether California law applies to Kilroy's § 790.03(h) claim. It does. With respect to all other claims, Kilroy's motion is denied. The substantive allegations of bad faith denial of coverage must await resolution at trial.