[Civ. No. 44260. Second Dist., Div. One. Mar. 18, 1975.]

CARL D. FRY, Plaintiff and Respondent, v.
FRANK PEKAROVICH, as Recording Secretary, etc., et al.,
Defendants and Appellants.

**COUNSEL**

Warren, Adell & Miller, Charles Warren and Hirsch Adell for Defendants and Appellants.

Arthur Levitas for Plaintiff and Respondent.

## OPINION

McCOURTNEY, J.*—This appeal is taken from a judgment granting a writ of mandate ordering appellant McCarns, as secretary of All City Employees Association, to include, among the signatures on a petition to be verified by her, those of general members as well as represented members of the appellant All City Employees Association (hereinafter referred to as ACEA).

The ACEA is a nonprofit corporation which offers membership to employees of the City of Los Angeles. A joint council of that body with the American Federation of State, County and Municipal Employees, AFL-CIO (AFSCME) was formed in October 1971, for the purpose of representing employees of the city in accordance with the appropriate ordinance. Thereafter the joint council proceeded to file petitions seeking certification as the recognized employee organization and bargained for the members of the ACEA in classifications of employees that had selected the joint council to represent them. At the time this writ was argued in the trial court there were 2,104 members represented by AFSCME, (denominated by the by-laws as represented members) and 9,223 members not represented (general members).

Respondent herein, a general member, filed with appellant McCarns a petition requesting the board of directors of ACEA to rescind its agreement with AFSCME forming the joint council and should the board fail to so act, to submit the question of rescission to vote of the members. Appellant McCarns as recording secretary was charged with the duty of verifying the signatures and determining whether there was a sufficient number. McCarns examined the petition and notified respondent that the number of signatures was insufficient in that the only valid signatures were those of represented members. Two weeks later the board of directors of ACEA by formal action in regular meeting adopted the letter sent by McCarns to respondent; and thereafter respondent filed the subject action seeking a writ of mandate to verify signatures of general members as well as represented members. That writ was granted and this appeal followed.

Appellant maintains (1) that there is ambiguity in the provisions of the by-laws, therefore the interpretation of the board of directors should be binding upon the courts, minus a finding of unreasonableness or

---

*Assigned by the Chairman of the Judicial Council. Although Honorable Alfred J. McCourtney was present at time of oral argument herein, he died March 10, 1975.

arbitrariness, (2) assuming the court should make an independent interpretation, the court erred in its ruling, (3) the appellant McCarns' duties were discretionary rather than ministerial in nature and thus a writ of mandate was improperly issued, and (4) the writ improperly terminated a joint venture prior to the completion of its purpose.

Appellant argues that the board of directors of ACEA by its action in adopting McCarns' letter to respondent properly exercised its power to interpret the by-laws and the court is restricted in its power to make an independent determination and overrule that body. Appellants point to 18 Corpus Juris Secundum, section 183, page 595, wherein, in relation to the interpretation of by-laws of an unincorporated association, it is stated: "The board of directors of a corporation may interpret an ambiguous by-law without formality, the interpretation arising from their conduct and methods of transacting business, and the general rule as to recognizing a practical construction by the parties applies, so that, in the case of ambiguity in a by-law, a court will not give it a positive construction opposed to any consistent practical construction which it has received from the corporation and its members, where such practical construction is not unreasonable, or contrary to the principles of justice or morality or to any rule of law or public policy. The courts, however, are not bound by the construction adopted by the corporation, its officers, or its members." That concept has been adopted in California courts (*DeMille* v. *American Fed. of Radio Artists* (1947) 31 Cal.2d 139 [187 P.2d 769, 175 A.L.R. 382]; *Williams* v. *Inglewood Board of Realtors* (1963) 219 Cal.App.2d 479 [33 Cal.Rptr. 289]). It is therefore argued by appellant that there was an ambiguity, the board made a reasonable interpretation, and it was not within the trial court's province to reverse the board's ruling.

Neither the finding of lack of ambiguity by the trial court nor its interpretation of the by-laws has any binding effect on this appellate court. █ In the absence of extrinsic evidence the interpretation of writing is a matter of law and must be independently determined upon appeal. (*Estate of Platt* (1942) 21 Cal.2d 343 [131 P.2d 825]; *Estate of Shannon* (1965) 231 Cal.App.2d 886 [42 Cal.Rptr. 278]; *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839].)

In any case we do not find that this court is required to find ambiguity or unreasonableness in the determination of the board of directors to rule unconstrained by that interpretation. An analysis of the philosophy advanced in 18 Corpus Juris, *supra,* and the holding of the cases cited

herein, adopting that philosophy, indicate that the concept developed because the courts considered the ruling body of those unincorporated associations better suited to construe the meaning of by-laws in cases where the practice and customs of the association were at issue. *Parsons* v. *Bristol Development Co., supra,* extensively discusses the rule, the history, and reasoning therefor. The author in an article entitled *Developments in the Law, Judicial Control of Actions of Private Associations,* appearing in 76 Harvard Law Review 983, noted at page 991: ". . . If a court undertakes to examine the group's rules or past usages, its inquiry may lead it into what Professor Chafee has called the 'dismal swamp,' the area of its activity concerning which only the group can speak with competence. Rules and usages which have taken on a peculiar meaning over a period of time, when interpreted by a court which is unfamiliar with the group or unsympathetic to its practices, may be construed in a way which does not reflect the understanding of the members prior to the dispute." However, we fail to find any case wherein the doctrine has been held applicable where the question at issue is the meaning of by-laws that may be determined without reference to custom or usage. Similar to the independence of the appellate court upon review of writings where no extrinsic evidence is pertinent or offered the matter becomes a question of law and it is the duty of the court to reach an independent judgment based on its own interpretation of the meaning of the by-laws in question.

██ We find no ambiguity in the provisions of the by-laws relating to initiative by petition. Nor do we find any necessity for examination of custom or usage. Article V, section 4 provides in part an initiative petition "signed by not less than twenty (20) percent of the members voting for all candidates for President at the last preceding election shall be filed with the Recording Secretary demanding the calling of a special election to submit such recall, initiative or referendum to a vote of the members. Within fifteen (15) days, the Recording Secretary shall verify the signatures on such petition, and if insufficient in number, shall notify the members by whom it was filed to submit a supplemental petition bearing the requisite number of signatures within five (5) days."

Article II, section 1 (c) provides in part, "Only members who hold the rights and privileges of a General Member shall be entitled to vote in the election of officers."

There is provision for six categories of membership. Only two of them

are relevant, represented, those electing to have the joint council represent them, defined in section 1 (a)[1] and general, every employee of the city, defined in section 1 (b).[2]

The collective sections referred to provide that all members are eligible to vote for the office of president therefore all members would be eligible to sign an initiative petition. To this point the meaning of the by-laws seem crystal clear. The difficulty arises as appellant points out with the sentence in section 1 (b), "No General member may participate in the affairs of the Association that pertain to the Represented members." It is argued that certainly an initiative petition that seeks to dissolve the joint council seeks to "participate" in the affairs that pertain to represented members. This limitation is the crux of the problem. If a petition not related to the affairs of the represented members may be signed by general members what is the effect of the restrictive clause?

The obvious purpose for the formation of the joint council was to create a vehicle for negotiating and bargaining on behalf of the city employees who were eligible and elected to become members of the represented groups. Represented members are so defined in article 1, section 1 (a) *supra,* and are therein given certain additional rights and privileges provided for in other sections of the by-laws. An examination of those by-laws reveals those members alone are entitled to participate in the selection of officers and representatives whose duties are to confer and negotiate with the city in relation to wages and other terms of

---

[1]"a. Represented Membership

"Represented members are members of ACEA within classifications of employment within the City which have duly elected ACEA/AFSCME, AFL-CIO, a Joint Council as their majority representative pursuant to any applicable provisions of Federal or State Laws, or local Ordinances pertaining to the collective bargaining rights of public employees. Represented members shall be entitled to whatever special rights and privileges as are reserved thereto in these bylaws in addition to all rights and privileges of a General member.

[2]"b. General Membership

"Every employee of the City of Los Angeles, in whatever capacity, elective or appointive, shall be eligible for membership in the All City Employees Association as a General Member.

"General Members shall have all the rights and privileges of membership except those specifically reserved to Represented and Contract members but subject to any limitations based on classification or position held as delineated in any applicable Federal or State law or local Ordinances.

"No employee of the City who is eligible to become a Represented member may be a General member. No General member may participate in the affairs of the Association that pertain to the Represented members."

employment. These then would seem to be the "affairs of the association that pertain to the Represented members" and from which the general members are prohibited from interfering. It may well be argued that the dissolution of the joint council will certainly interfere as there will be a bargaining unit no longer, but as drastic as the result may be, it is incidental to the rights of the entire membership to determine the basic policy and purpose of the association. Adoption of appellants' position would prevent the members as a whole from changing the purpose or policy of the association if it affected represented members. The joint council was created by all members, there is no indicating that those members were thereby deprived of any rights except the right to participate in or interfere with the negotiations with the city, and the general membership was therefore entitled to participate in a matter affecting the entire association, namely the reconsideration of the participation in a joint council.

■ Appellants further contend the act of verification in question was discretionary in nature and therefore not subject to mandate. As we have determined, the by-laws are specific in that they designate the members eligible to sign petitions, the number required, and the duties of the secretary. Those provisions require no exercise of individual judgment or application of discretion by that officer. As has been pointed out the difficulty arose in interpreting a different section of the by-laws. The resolution of that seeming conflict was not within the duties assigned to the secretary. That responsibility was one of the board of directors or a proper legal reviewing agency. Her duties therefore were simply those of counting, verification, and notification. None of which called for the exercise of individual judgment or alternative courses of action. Her duties therefore were purely ministerial rather than discretionary.

Finally appellants argue that this alliance with AFSCME is a joint venture, that the purpose thereof has not yet been accomplished, and therefore neither can withdraw without the consent of the other. Without determining whether or not this association is a "joint venture" and subject to the case law urged, the respondent and other petitioners should not be precluded from petitioning to initiate to terminate the relationship because the other party may or may not consent or because there may be the necessity of a legal determination of the rights of the parties at a future date. The determination of the ultimate legal results of an initiative petition is not the responsibility of the verifying agent.

(*Farley* v. *Healey* (1967) 67 Cal.2d 325 [62 Cal.Rptr. 26, 431 P.2d 650].) We therefore find the contention without merit.

The judgment is affirmed.

Lillie, Acting P. J., and Thompson, J., concurred.