[Civ. No. 48275. Second Dist., Div. One. Nov. 9, 1976.]

BEAUMONT-GRIBIN-VON DYL MANAGEMENT
COMPANY, Plaintiff and Respondent, v.
CALIFORNIA UNION INSURANCE COMPANY,
Defendant and Appellant.

**COUNSEL**

Jones & Wilson and Robert E. Jones for Defendant and Appellant.

Ruderman, Levin, Ballin, Plotkin & Graf, Justin Graf, Jay Plotkin and Harmon for Plaintiff and Respondent.

**OPINION**

**LILLIE, J.**—Defendant, California Union Insurance Company (Cal Union), appeals from a judgment entered in favor of plaintiff Beaumont-Gribin-Von Dyl Management Company, a California corporation (Management), on a policy of professional malpractice insurance. The policy provides maximum coverage of $500,000, with an amount of $2,500 deductible "from the total amount resulting from each claim." ▆▆▆ The resolution of the primary issue before us depends upon whether the word "claim,"[1] within the meaning of the insurance policy, is ambiguous.

Management was a property management organization acting as property manager for a number of property owners in the Santa Barbara area. Its responsibilities included collecting rentals from the occupants of the various properties, depositing them into a trust account, paying the

---

[1]This is not one of the terms defined in the policy itself.

clients' bills, and disbursing the balance of the rental proceeds to the clients.

On November 9, 1971, Management consummated a sale of its property management business to Syncom Management Company. As part of this sale, it transferred to Syncom a bank trust account in which some 34 of its clients had interests. Management had not requested or received the consent of its clients to the assignment of the property management contracts.

Almost immediately after the sale was completed, the trust account was closed by one or more representatives of Syncom who apparently absconded with the trust funds, approximately $29,000. The clients, whose funds had comprised the account, sought reimbursement from Management which in turn demanded, under its insurance policy, that Cal Union satisfy the clients' claims. Management's position was and is *that it is the aggregate claims that should be reduced by the deductible* amount of $2,500; Cal Union asserted that the deductible of $2,500 is applicable to the claim of each individual client. Under this latter theory, Cal Union proffered $1,034.44 in full satisfaction, only three claims being in excess of the $2,500 deductible. This offer was declined. Management reimbursed its clients and instituted this action to recover from Cal Union.

Management's second amended complaint essentially survived demurrer.[2] After the filing of Cal Union's answer, the parties filed cross-motions for summary judgment; Management also moved the court to specify certain issues as without substantial controversy and established in its favor.[3] Both motions for summary judgment were denied. However, the court granted the motion of Management to specify, having concluded, inter alia,[4] that the insurance policy was ambiguous as to whether the word "claim" meant the *individual* claim of *each* person harmed by the insured's act, error, or omission or, the

[2]Cal Union's demurrer to the second amended complaint was sustained with respect to a cause of action for declaratory relief, the court holding such relief to be inappropriate since the action appeared to be a matured claim for money. Leave to amend was granted, but Management declined to amend, thus the action proceeded on a single cause.

[3]Under the recently amended Code of Civil Procedure section 437c this is the terminology applicable to summary judgment as to some but not all issues involved in the action.

[4]Also determined in this manner was Cal Union's liability on the policy.

insured's claim against the insurer for the total liability incurred by reason of a single act, error, or omission on its part. Applying the principle of interpretation *contra proferentem,* the issue was determined in favor of Management, the insured. The matter proceeded to trial on the remaining issues, principally that of damages, culminating in the within judgment.

No extrinsic evidence was offered in aid of interpretation of the pertinent provision of the policy. Thus, in the absence of intrinsic evidence the interpretation of the writing is a matter of law and must be independently determined on appeal. (*Fry* v. *Pekarovich,* 46 Cal.App.3d 165, 168 [120 Cal.Rptr. 55].)

There is no real dispute relative to the applicable rules of construction. It is the general rule that, in the event of uncertainty of meaning, a written contract is to be construed against the party who prepared it. (*Yamanishi* v. *Bleily & Collishaw, Inc.,* 29 Cal.App.3d 457, 463 [105 Cal.Rptr. 580].) This rule comports with fairness and common sense in that it prevents the party with the primary opportunity to avoid misunderstanding, from capitalizing thereon. It is true not only that insurance contracts fall within the scope of this rule, but also that the rule applies to them with special force. (See *Gray* v. *Zurich Insurance Co.,* 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168].) Any ambiguity or uncertainty in an insurance policy must be resolved in favor of the insured. (*Insurance Co. of North America* v. *Electronic Purification Co.,* 67 Cal.2d 679, 686 [63 Cal.Rptr. 382, 433 P.2d 174].) If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; whether the doubt relates to extent or fact of coverage, peril insured against, amount of liability or persons protected, the language will be understood in its most inclusive sense for the benefit of the insured. (*State Farm Mut. Auto. Ins. Co.* v. *Elkins,* 52 Cal.App.3d 534, 538 [125 Cal.Rptr. 139].) If *semantically permissible,* the insurance contract will be given such construction as will fairly achieve its manifest object of securing indemnity to the insured for losses to which the insurance relates. (*Holz Rubber Co., Inc.* v. *American Star Ins. Co.,* 14 Cal.3d 45, 60 [120 Cal.Rptr. 415, 533 P.2d 1055]; *Crane* v. *State Farm Fire & Cas. Co.,* 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089].) Moreover, "in doubtful cases, the law favors the insured over the insurer." (*State Farm Mut. Auto. Ins. Co.* v. *Elkins,* 52 Cal.App.3d at p. 538 [125 Cal.Rptr. 139].)

■ It has long been particularly true that provisos, exceptions, and exclusions in an insurance policy will be strictly construed against the insurer. (See *Pacific etc. Co.* v. *Williamsburg,* 158 Cal. 367, 369-370 [111 P. 4].) While technically a deductibility clause may not be an exception to insurance coverage or an exclusion therefrom, inasmuch as it too functions as a limitation on the liability of the insurer, it must be treated the same as other such limitations. (See *Hays* v. *Pacific Indem. Group,* 8 Cal.App.3d 158, 165 [86 Cal.Rptr. 815].)

■ Of course, none of the foregoing means that the parties are not free to make their own bargain. A court will not distort the plain meaning of the contract to impose unassumed liability on an insurer. (*Farmers Ins. Exch.* v. *Harmon,* 42 Cal.App.3d 805, 809 [117 Cal.Rptr. 117].) And the law provides numerous rules for the interpretation of contracts (Civ. Code, § 1635 et seq.) designed to resolve questions of meaning before recourse to the rule of strict construction against the drafter. (Civ. Code, § 1654.)

■ The instant dispute really is not over the meaning of the word "claim" in any abstract sense. As with words generally, the meaning of "claim" will be determined by its use in context. "Claim" or its plural form appears some 20 times in the insurance policy. Cal Union argues that, contrary to the opinion of the trial court, the usage of the term makes it clear that a "claim" must be by a third party against the insured; that the usage consistently contrasts the claim of a third party against the insured with any rights of the insured against the insurer. In the view of Cal Union, the court made an unwarranted conversion of a "claims made" policy into an "occurrence" policy.

It is true that, for the most part, the insurance policy uses "claim" to refer to a right, or an assertion thereof, against the insured. However, in the crucial deductibility clause this does not appear to be the case. In relevant part, this clause reads: "It is agreed that in the event of a claim the deductible amount shown in the Schedule shall be deducted from the total amount resulting from each claim and the company shall be liable only for the difference between such deductible amount and the amount of insurance otherwise applicable to each claim."

The phrase "total amount resulting from each claim" would, under Cal Union's interpretation of the contract, seem to have little meaning, since presumably the "total amount resulting from each claim" would be simply the amount of the claim; there would be no totaling involved. On the other hand, if the clause is read "in the event of a claim [by the insured] the deductible amount . . . shall be deducted from the total amount resulting from each claim [by a third party]," some semblance of meaning materializes from the totaling provision.[5]

A second, more general source of uncertainty appears in the contract. Throughout the policy, a third party claim (singular) is connected with an act, error or omission on the part of the insured. What is to happen in the event that an act, error or omission results in multiple claims by similarly situated claimants? It will not suffice to say that the policy does not cover such situations, inasmuch as the manifest purpose of the insurance is to protect Management against losses resulting from malpractice in the rendition of professional services. ■ The reasonable expectations of the insured cannot be ignored. (See *Russell* v. *Bankers Life Co.,* 46 Cal.App.3d 405, 413 [120 Cal.Rptr. 627].) Cal Union asserts "it is unlikely that respondent or appellant ever reasonably (or unreasonably) expected this unique set of circumstances to occur." But surely Management reasonably expected to be insured against a $29,000 loss caused by a single act in an amount greater than $1,034.44.

We agree with Management that the label, whether "claims made" or "occurrence," applied to an insurance policy is of little aid in its interpretation. The insurer can in any case define the operation of the deductibility clause to apply to third party claims severally or in the aggregate.

The case of *Lamberton* v. *Travelers Indemnity Company* (Del.Super.) 325 A.2d 104, affd., 346 A.2d 167, cited by Cal Union, has slight persuasive value. This is so, not necessarily because of any disagreement with the conclusion of the court in that case that the deductible amount

---

[5]This construction, at least semantically permissible, offers hope of some meaning for an otherwise puzzling phrase. If there is difficulty in applying it so as to render the deductibility clause entirely coherent, this is likewise true for alternative constructions, which only underscores the ambiguity of the policy language.

was applicable to each of multiple claims arising from a single instance of misconduct on the part of the insured engineering firm, but because the contract there in question was, so far as appears from the portions reprinted in the opinion, significantly different from that before us. We do not doubt that application of the deductibility clause to "each claim" may mean that the deductible amount is subtracted from each and every claim asserted by a third party against an insured, whether one or several acts of the insured give rise to such claims. We simply conclude that is not so in the contract before us.

In *Haerens* v. *Commercial Cas. Ins. Co.*, 130 Cal.App.2d Supp. 892 [279 P.2d 211], an employee of plaintiff, a painting subcontractor, had, while sandpapering certain metal strips on window panes, carelessly scratched a number of the panes. The general contractor replaced the damaged panes at a cost of $425 and deducted this amount from sums due plaintiff. Plaintiff made a demand on its insurer. The insurer denied liability under the policy, claiming that each damaged pane gave rise to a separate claim none of which exceeded the $50 deductible amount. The relevant policy provision read " 'it is therefore understood and agreed that each claim covered by the policy whether or not more than one claim arising out of the one and same accident, shall be adjusted separately and any claim when determined which is not greater than Fifty and no/100 dollars ($50.00) shall be paid by the assured. . . .' " In reversing judgment for defendant insurer, the appellate department found "claim," as used in the deductibility provision, to be neither certain in itself nor made certain by any provision of the policy, and said at page 894: "It is not unreasonable to say that the claim made upon the plaintiff by the contractor, to whom he was responsible, was for $425, the cost of replacing all the panes ruined by plaintiff's employee."

As interesting as the holding of *Haerens* is the theory advanced by the insurer. It seems but a logical extension of that advanced now by Cal Union. If the amounts owing to each of the thirty-four persons whose money was held in the trust account represented net rentals from, say, three months, would each demand in turn be considered three claims, one for each month's rental? Or, conversely, had the 34 clients of Management acted jointly presenting a single demand for the total sum of $29,000, would this have been a single claim?

 We believe that the more reasonable construction of this insurance policy entitles Management to the judgment rendered below. The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 5, 1977.