[Civ. No. 26785. Third Dist. Nov. 26, 1986.]

CALIFORNIA TRIAL LAWYERS ASSOCIATION et al., Petitioners, v. THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent; PETER MILLS et al., Real Parties in Interest.

**COUNSEL**

Joseph Remcho, Robin B. Johansen, Kathleen J. Purcell, Barbara S. Gall and Remcho, Johansen & Purcell for Petitioners.

No appearance for Respondent.

Kevin J. Culhane, Hansen, Boyd, Culhane, Mounier & Doyle and Allan J. Owen for Real Parties in Interest.

---

**OPINION**

**PUGLIA, P. J.**—In this case we hold that the courts should refrain from reviewing the interpretation and application by the governing board of a private voluntary association of its bylaws.

Petitioners, California Trial Lawyers Association (CTLA) and its Board of Governors (board) seek review by extraordinary writ of the superior court's judgment in favor of real party in interest, William Weniger. The judgment ordered CTLA to declare real party in interest, Peter Mills, to be the president-elect of the association for the one-year term of office commencing December 1, 1986. We agree with petitioners that the trial court should not have exercised its jurisdiction by intruding upon the internal affairs of a voluntary private association. We shall therefore grant the requested relief.

Under the bylaws of the CTLA, its membership participates annually in an election to choose a number of officers, including the president-elect. The president-elect serves a one-year term commencing on December 1 and terminating on November 30 of the following year. The bylaws further provide that at the end of that year, the person holding the office of president-elect automatically becomes president. In order to be eligible for the position of president-elect, article VI(g)(2) of the bylaws requires that a candidate must have served as an officer of the association for at least one year during the five years immediately preceeding the commencement of his or her term. The CTLA has ten officers, five of whom, the president-elect and four vice-presidents, are elected by the general membership. The remainder are selected by the board of governors. Article VII(e) and VIII(c) of the bylaws provide that the new board of governors elected each year by the membership shall take office on December 1, and hold its first organizational meeting "as soon as practicable after December." At that meeting, the board elects the four officers not voted upon by the general membership.

On December 6, 1985, the newly elected board picked J. Gary Gwilliam to fill the office of parliamentarian for the 1985-1986 term. While holding that position, Gwilliam, on September 8, 1986, officially became a candidate in the 1986 contest for president-elect. His only opponent was real party in interest Peter Mills. Immediately after Gwilliam filed his nomination doc-

uments, the then president of the association received three letters from members challenging Gwilliam's qualifications to hold office. The objectors relied on the previously mentioned requirement of article VI(g)(2) that the president-elect must have served at least one year as an officer prior to the date on which his term as president-elect would begin. Since Gwilliam was not designated by the elected board as parliamentarian until December 6, 1985, the challengers argued, he would lack by five days the one-year prior service necessary to his becoming president-elect on December 1, 1986. Upon receipt of these protests, the president designated a committee to investigate the issue. On September 14, the committee recommended to the board of governors that the challenge be rejected and Gwilliam be deemed a qualified candidate for the office of president elect. The board then voted by a 33 to 7 majority to adopt the committee's recommendation, and the election went forward with Gwilliam and Mills as candidates.

On September 23, 1986, real party in interest Weniger, as a member of CTLA, filed a petition for writ of mandate in the superior court seeking to have the decision of the board set aside. The petition asked that CTLA be directed to disqualify Gwilliam and, pursuant to article XII(f) of the bylaws, declare Mills as an unopposed candidate to be the president-elect for the 1986-1987 term. Trial of the matter was set for September 23. However, before that hearing, ballots bearing the names of Gwilliam and Mills as candidates for the disputed office were distributed and the votes of the membership cast. On October 30, the superior court filed a "RULING ON SUBMITTED MATTER" directing preparation and entry of a judgment granting Wenigar's petition. The writ itself was issued on October 31. By its terms, CTLA was directed to declare Gwilliam disqualified under the terms of article VI(g)(2) and to install Mills as 1985-1986 president-elect.

After the trial, but while the superior court had the matter under submission, the members' ballots were returned and the votes tabulated. The results showed Gwilliam to be the choice of the general membership by a margin of 1,163 to 957, or approximately 55 percent to 45 percent. This count was made and the outcome announced on October 29.

On the day the superior court issued the writ of mandate, petitioners filed a notice of appeal in this court. However, in an effort to expedite resolution of the dispute, they also promptly sought review by way of the instant petition for extraordinary relief. ■ The superior court's order granting the writ in favor of real party Wenigar is, of course, appealable, and under normal circumstances petitioners would be relegated to that remedy. (Code Civ. Proc., § 904.1; see *Running Fence Corp.* v. *Superior Court* (1975) 51 Cal.App.3d 400, 409 [124 Cal.Rptr. 339]; *Carroll* v. *Civil Service Com-*

*mission* (1970) 11 Cal.App.3d 727, 733 [90 Cal.Rptr. 128].) Nonetheless, when the remedy by appeal is rendered inadequate in the context of a specific case, this court may, in its discretion, permit an aggrieved party to bypass the appellate process and pursue extraordinary relief. (*Running Fence Corp.* v. *Superior Court, supra,* and see Code Civ. Proc., §§ 904.1, subd. (a), 1086.) In this case, the time consumed by the normal appeals process would protract the uncertainty as to the identity of the president-elect well into the 1986-1987 term and might well cast a cloud over the presidency itself for all or part of the 1987-1988 year. Therefore we conclude the remedy by appeal is inadequate, and we shall entertain the petition for mandamus on its merits.

■ The essence of petitioners' case both here and in the trial court is that the disagreement surrounding Gwilliam's qualifications constitutes an internal dispute over the proper interpretation and application of the rules of a voluntary association in which the courts have no jurisdiction to intervene. Real parties second the superior court's ruling to the effect that this case does not require interpretation or construction of the CTLA bylaws, and that CTLA is required by the plain and unambiguous terms of the relevant articles to disqualify Gwilliam and declare Mills president-elect. Our reading of the bylaws persuades us that petitioners have the better of the argument. Accordingly, we hold that the superior court should have deferred to the board's interpretation and application of its own rules.

In stating their respective positions, the parties rely principally on the guidelines set out in *California Dental Assn.* v. *American Dental Assn.* (1979) 23 Cal.3d 346 [152 Cal.Rptr. 546, 590 P.2d 401]. There the court held that "when a private voluntary organization plainly contravenes the terms of its bylaws, the issues of whether and to what extent judicial relief will be available depend on balancing (1) the interest in protecting the aggrieved party's rights against (2) the infringement on the organization's autonomy and the burdens on the courts that will result from judicial attempts to settle such internal disputes." (23 Cal.3d at p. 350.) However, the court also noted that "In many disputes in which [the rights and duties of the membership in relation to the association] are at issue . . . the courts may decline to exercise jurisdiction. Their determination not to intervene reflects their judgment that the resulting burdens on the judiciary outweigh the interests of the parties at stake. One concern in such cases is that judicial attempts to construe ritual or obscure rules and laws of private organizations may lead the courts into what Professor Chafee called the 'dismal swamp.'" (*Id.,* at p. 353.) Quoting the Arizona Supreme Court in *Blende* v. *Maricopa County Medical Society* (1964) 96 Ariz. 240 [393 P.2d 926], the opinion cautioned that courts must avoid interfering with an organization's autonomy

by substituting "judicial judgment" for that of the association's in an area where the association is more competent. (*California Dental Assn., supra,* at pp. 353-354.)

In *California Dental Association* the court undertook to intercede in an association's internal battle only after observing that the case was "not one in which the [parties] are engaged in a dispute concerning the *interpretation* of [their] bylaws. If it were, the interests of the [American Dental Association] in autonomy and the burdens on the courts that might result from attempting to resolve such disputes would be strong considerations militating against judicial review." (23 Cal.3d at p. 355, fn. 3.) (Original italics.) ■ Indeed, the court recognized that the initial question in determining whether judicial action is appropriate is whether the challenged action "plainly contravenes" the association's bylaws. Only then does the balancing test noted above come into play. (*Id.,* at p. 354.) This reluctance to intervene in internecine controversies, the resolution of which requires that an association's constitution, bylaws, or rules be construed, is premised on the principle that the judiciary should generally accede to any interpretation by an independent voluntary organization of its own rules which is not unreasonable or arbitrary. (See *Williams* v. *Inglewood Board of Realtors* (1963) 219 Cal.App.2d 479, 486-488 [33 Cal.Rptr. 289].)

■ We are of the opinion that this policy of judicial restraint controls in the present case. We do not find the pertinent provisions of the CTLA bylaws to be so clear and unambiguous that the question of who shall assume the office of president-elect may be answered without engaging in an interpretation of those provisions. It may be true that article VI(g)(2), when read in isolation, appears clearly to require a candidate to have served as an officer for exactly one calendar year prior to assuming the title of president-elect. However, we cannot close our eyes to other articles of the bylaws which tend to roil that apparently limpid language. For instance, provisions we have earlier referred to require the board of governors to select the officers not elected by vote of the membership at its annual organizational meeting. That meeting may not be held until sometime after December 1. However, the bylaws also specify that each officer's term shall run from December 1 through the following November 30. The difficulties in application of article VI(g)(2), given these other rules, become obvious. How is it possible for a term of office to commence on December 1, if the bylaws do not permit selection of the officeholder until after that date? Is it the purpose of article VI(g)(2) to require all persons elected to an office by the board actually to serve *two* terms before becoming eligible to be president-elect? Or, is the rule intended to disqualify any board-elected officer from serving as president-elect during the year immediately succeeding his term?

One or both of these results would be the required outcome if the literal application of article VI(g)(2) urged by real parties were accepted. While that view of the article's meaning may be within the realm of reason, we do not find the bylaws to be so clear and unambiguous that no exercise in interpretation is necessary. Nor do we believe that the construction indulged by the CTLA Board of Governors is unreasonable, arbitrary, or patently in contravention of its own rules. The board's position that article VI(g)(2) is simply aimed at assuring that an incoming president-elect will have at least one full term's experience as an officer, and that this purpose is satisfied even though the board did not actually meet and select the officeholder on December 1 but rather, five days later, is not obviously irrational. Equally reasonable is another theory suggested by CTLA, i.e., that although the vote was not conducted until December 6, Gwilliam's term as parliamentarian actually began nunc pro tunc on December 1.

Real parties cite *Fry* v. *Pekarovich* (1974) 46 Cal.App.3d 165 [120 Cal.Rptr. 55], as support for the proposition that courts need not accept a private organization's construction of its bylaws but are free independently to interpret such rules "where the question at issue is the meaning of bylaws that may be determined without reference to custom or usage." (*Id.,* at p. 169.) *Fry* was decided prior to the decision in *California Dental Assn., supra,* and the opinion is necessarily uninformed by the Supreme Court's caution in the latter case against judicial involvement in controversies requiring the interpretation of bylaws. More importantly, however, *Fry* is distinguishable in that the court there simply ordered the responsible officers of the association to implement provisions which were straightforward and unambiguous. (*Ibid.*) In contrast, the CTLA bylaws pertinent to this dispute are, as we have pointed out, ambiguous, and therefore in need of interpretation.

We conclude that the question of who shall be president-elect of CTLA for the 1986-1987 term cannot be resolved without engaging in the interpretation and construction of several seemingly inconsistent provisions of that organization's bylaws. Since the meaning attributed to those provisions by the CTLA Board of Governors was not unreasonable, arbitrary or plainly in contravention of those bylaws, the superior court erred in substituting its own judgment for that of the association.

Having satisfied the prerequisites established in *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893], we may grant the instant petition without first issuing an alternative writ. Let a peremptory writ of mandate issue directing respondent superior court to vacate its order granting real party in interest Wenigar's petition for writ

of mandate, and to enter a new order denying that petition. Pursuant to California Rules of Court, rule 24(c), our decision herein will become final as to this court immediately.

Blease, J., and Sparks, J., concurred.