[No. C038203. Third Dist. Feb. 27, 2002.]

JIM HARD et al., Plaintiffs and Respondents, v.
CALIFORNIA STATE EMPLOYEES ASSOCIATION, Defendant and
Appellant.

**COUNSEL**

Anne M. Giese, Daniel S. Connolly, Nancy T. Yamada; and Steven B. Bassoff for Defendant and Appellant.

Katzenbach & Khtikian and Christopher W. Katzenbach for Plaintiffs and Respondents.

**OPINION**

**DAVIS, J.**—Plaintiffs Jim Hard and Cathy Hackett are members and directors of defendant California State Employees Association (CSEA) and the representatives of a class of employee members known as the Civil Service Division (the Division). They petitioned the trial court for a writ of traditional mandamus directing the CSEA to give effect to a vote of the Division approving the incorporation of the Division as an affiliate.[1] The trial court granted the petition. In August 2001, we granted the CSEA's petition for a stay preventing the Division either from conducting business or representing its members as a corporation.

On appeal, the CSEA argues the election violated provisions of the Government Code[2] that give the Public Employment Relations Board (PERB) exclusive or primary jurisdiction[3] over questions involving the representation of state employees in labor matters. CSEA also contends the election violated election procedures that the CSEA's board of directors enacted, or provisions of the Corporations Code. Finding neither of these claims persuasive, we shall affirm. The stay, having served its purpose, will be vacated.

The pertinent facts are few and undisputed. We therefore will not relate them separately and will instead incorporate them where relevant in the discussion.

[1]Code of Civil Procedure section 1085; see *Anton v. San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 816-817 and footnote 15 [140 Cal.Rptr. 442, 567 P.2d 1162].

[2]Government Code sections 3540, 3541.3. Undesignated section references are to the Government Code.

[3]See *Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 390-391 [6 Cal.Rptr.2d 487, 826 P.2d 730].

## Discussion

■ In proceedings for traditional mandate, the trial court is limited to determining whether an organization's decision was arbitrary or whether the organization failed to follow prescribed procedures; we apply the identical standard de novo.[4] Before we reach the substantive issue, however, we must first consider the CSEA's jurisdictional argument.

### I

The CSEA is an employee organization[5] comprised of four distinct classes: the Division (consisting of active employees in the civil service organized in nine bargaining units), state university employees, supervisory employees, and retirees. The CSEA is the recognized exclusive representative for the active employees in the civil service in their labor relations with the Governor.[6]

■ The CSEA argues the incorporation of a division is a matter within the jurisdiction of the PERB, and thus the Division must first resort to the PERB's administrative jurisdiction before seeking relief in court. The CSEA premises this argument on the PERB's authority to decide issues of recognition of employee organizations, and its authority to determine the rights of an employee organization *"in the event of* a merger, amalgamation, or transfer of jurisdiction between two or more employee organizations" (italics added).[7] This argument, however, is the classic cart placed before the horse.

Under the CSEA's bylaws, "Any class [of CSEA members] may . . . by the affirmative vote of a two-thirds majority of its General Council delegates, organize itself as a separate corporation, while . . . retaining its membership in the [CSEA]. Such separate corporation organized pursuant to this article shall be known as an 'affiliate' of the [CSEA]. . . . The [CSEA] . . . shall cooperate in good faith with any class which wishes to incorporate, including . . . *arranging for the assignment* of the [CSEA]'s bargaining agreement and bargaining agency for such class to the affiliate." (Art. IX, § 1, emphasis added.) It is significant this provision adopts a future perfect tense for the status of an affiliate as a recognized exclusive representative of its class of members, because there are steps necessary beyond the incorporation itself to effect this change in representation.

---

[4]*Lewin v. St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 383, 387 [146 Cal.Rptr. 892].

[5]Section 3513, subdivision (a).

[6]Sections 3513, subdivision (b), 3515.5, 3520.5, 3541.3, subdivision (c).

[7]Section 3541.3, subdivision (m); see also sections 3513, subdivision (h), 3541.3, subdivision (*l*).

This is also reflected elsewhere in the bylaws: "The [CSEA] shall represent organized employees . . . except and to the extent such representation rights have been transferred to a duly chartered affiliate organization." (Art. II, § 1(b).) Until a transfer of this *authority* to act as the exclusive representative of the employees, the division/affiliate acts merely on behalf of the CSEA: "The divisions/affiliates shall have the exclusive *responsibility* for [memorandum of understanding] negotiations, meet and confer sessions . . . , [and] member representation . . . ." (*Id.* at § 4(b)(1), italics added.) The distinction between "responsibility" and "authority" occurs in article VIII as well, which establishes a council for governing each division (*id.* at § 2) that acts *"on behalf of* the [CSEA] . . . in matters pertaining to the scope of representation . . . ." (*Id.* at § 3, emphasis added.)

The bylaws thus acknowledge that the CSEA's status as the exclusive representative can be revoked *only* "by a majority vote of the employees,"[8] or upon a request for PERB to determine whether to amend the certification of the employees' exclusive representative to reflect a change of identity.[9] Until such time, the incorporation of a division is a mere change of internal union structure, an issue over which PERB abjures any jurisdiction.[10] After all, the statute speaks in post hoc terms of PERB's determination of the rights of employee organizations: "in the event" of a change of structure, not in anticipation of the change in structure.[11]

It is thus unsurprising that PERB declined the CSEA's invitation to intervene in the present matter. Consequently, there was no administrative jurisdiction for the Division to exhaust or to invoke initially before filing its petition in court. We do not express any opinion on the necessity for or nature of any particular postjudgment PERB proceedings.

## II

■  The CSEA's bylaws provide that they are "the supreme law of the [CSEA], subject only to the Articles of Incorporation and the provisions of the laws of . . . California and the United States of America. Any inconsistent provision of the Policy File . . . is void." (Art. XIX, § 1.)

The "Policy File" is a collection of rules that the CSEA's board of directors has enacted. The CSEA does not point to any explicit authorization in the bylaws for its board's practice of enacting these rules (other than the

---

[8]Section 3520.5, subdivision (c).
[9]California Code of Regulations, title 8, sections 32761, 32763.
[10]See *Anaheim City School Dist.* (1983) PERB Dec. No. 349 [7 PERC ¶ 14263, pp. 2-3].
[11]Section 3541.3, subdivision (m).

acknowledgment of their existence in article XIX's "supremacy clause"), claiming the rules are part of the board's inherent powers to manage the affairs of the corporation and interpret its bylaws.

The provision of the Policy File at issue states, "Written notice of the meeting [to vote on incorporation] shall be given to the electorate by the division at least 60 days prior to the scheduled meeting date. The notice shall state the date, time[,] and place for the meeting and that a vote on whether the division shall incorporate shall be the only item of business for that meeting." (§ 1307.05(b).)

In the present case, the CSEA mailed an agenda in July 2000 for the 61st regular meeting of its general council. This notice included an entry for a "Civil Service Division Incorporation Meeting . . . (Dinner Provided)" on September 17, 2000, at 6:00 p.m. On August 25, the Division mailed a memorandum to its delegates on the subject of incorporation that indicated there would be a vote on the issue at the meeting on "Sunday evening, September 17, 2000. . . . We look forward to seeing you in Anaheim." At the meeting, the delegates not only approved incorporation on a roll call vote, but passed a budget for the Division as well.

The CSEA contends neither of the notices satisfied the procedural requirements for incorporation elections in the Policy File, because the July notice did not specify that an election on the issue would take place and the August notice was untimely. The CSEA further contends the meeting violated what it terms the "single agenda item" provision of the rule, because the delegates additionally voted on the Division's budget. Finally, the CSEA claims the failure to employ a secret ballot was a violation of due process.

The initial question is whether the procedures prescribed in the Policy File are binding on the Division. It is apparent from the CSEA's supremacy clause that Policy File rules are of a lesser dignity than the bylaws. They are not amendments to the bylaws, enacted in accordance with bylaw procedures. Indeed, the CSEA admits the Policy File is a means to evade the difficulties in amending the bylaws. Thus, we are not confronted with the question of whether the CSEA's board amended the bylaws in a manner that materially and adversely affected the rights of members as to voting.[12]

---

[12]Corporations Code section 7150, subdivision (a)(1).

Instead, the CSEA asserts the undisputed principle that a corporation's *articles and bylaws* define a contractual relation between it and its shareholders/members.[13] This flows from the unremarkable premise that members of a corporation "may *agree* among themselves and enter into such contracts as are not in contravention of any law of the state . . . ."[14] (Emphasis added.) However, CSEA then proceeds ipse dixit to include these *board-enacted* Policy File procedures within this principle as binding on CSEA members. CSEA does not give any authority for the unique theory of "unilateral contract formation" which underlies this argument (the CSEA identifying neither a mechanism for the formal approval of the membership of these board enactments, nor a provision in the bylaws expressly indicating agreement of the membership to submit to the Policy File as binding interstitial enactments).

The central question, then, is whether the Policy File procedural limitations on incorporation elections contravene the supremacy of the bylaws. ■ On this issue, we must defer to the board's determinations if any interpretation of the bylaws is necessary, because a court may intercede to void the actions of a private association only where the action plainly contravenes an unambiguous bylaw.[15]

■ As we have previously indicated, there is nothing in the bylaws authorizing the CSEA's board to impose notice and subject limitations on the process of calling a meeting for voting on the incorporation of a division. If the membership of the CSEA were concerned with mandating notice for a meeting of one of its divisions on incorporation in excess of that required under statutory provisions, and limiting the division's meeting to that single subject, the membership could easily have included these matters in the bylaws. To allow a board (such as the CSEA's) to promulgate rules that act in derogation of the otherwise unfettered right of the membership to vote on an issue would countenance corporate coups d'état. We therefore conclude the Policy File restrictions on incorporation votes are contrary to the clear and unambiguous provisions of the bylaws and cannot stand.

This being the case, the sole limitations on the vote exist in Corporations Code section 7511, subdivision (a). "Whenever members are . . . permitted to take any action at a meeting, a written notice of the meeting shall be given not less than 10 nor more than 90 days before the date of the meeting . . . ."

---

[13]*Casady v. Modern Metal etc. Mfg. Co.* (1961) 188 Cal.App.2d 728, 732-733 [10 Cal.Rptr. 790].

[14]*Fawkes v. Farm Lands Invest. Co.* (1931) 112 Cal.App. 374, 379 [297 P. 47].

[15]*California Trial Lawyers Assn. v. Superior Court* (1986) 187 Cal.App.3d 575, 579-581 [231 Cal.Rptr. 725].

The notice of the meeting must specify the place, date, time, and agenda. In the case of a "special meeting," only business included in the notice "may be transacted."

Under these provisions of the statute, the July and August 2000 communications were timely (the latter being more than 23 days before the meeting even if the former were incomplete) and adequately disclosed the business of voting on incorporation. Although the CSEA contends it was impermissible for the Division to vote on its budget at the same meeting, this is immaterial to the incorporation vote. In the first place, the restriction on the business to be transacted applies only to a special meeting (one *other than* the regular meeting specified in an organization's bylaws)[16] that is "called by the board . . . or such other persons, if any, as are specified in the bylaws . . . [or by] 5 percent or more of the members."[17] There is no showing this was anything other than a regular meeting of the Division at the annual general council of the CSEA. More importantly, however, the restriction on the agendum at a special meeting is not, as the CSEA contends, a species of the constitutional limitations on initiatives or legislative appropriation that limits them to a single subject.[18] Underlying a "single subject" provision is a concern with the prevention of attracting supporters for unrelated provisions in a measure when the merits of any individual provision itself might not succeed alone, obscuring the intent of those approving the measure.[19] The Corporations Code provision, on the other hand, acts only as a protection of the rights of members to notice of the actions contemplated at a special meeting— protecting those who do not consider a particular matter worthy of their attention from surprise. This interpretation is in accord with parallel provisions allowing for the transaction of any proper matter at a regular meeting[20] (which a member would expect to be open to the full panoply of the organization's concerns), while subjecting votes on certain subjects without notice to a requirement of unanimity[21] and generally limiting a quorum of less than one-third of the membership only to noticed matters.[22] Thus, while the adoption of the Division budget *might* have been impermissible *if* the September 2000 meeting were a special meeting (issues on which we do not express any opinion), this did not affect the vote for incorporation.

This leaves the CSEA's contention that the failure to employ a secret ballot violates "due process." This is a barefaced assertion raised without

[16]Corporations Code section 7510, subdivision (b)

[17]Corporations Code section 7510, subdivision (e).

[18]California Constitution, article II, section 8, subdivision (d), article IV, section 12, subdivision (d).

[19]*Senate of the State of Cal. v. Jones* (1999) 21 Cal.4th 1142, 1160, 1167-1168 [90 Cal.Rptr.2d 810, 988 P.2d 1089].

[20]Corporations Code section 7511, subdivision (a) (2d sentence, criteria (2)).

[21]Corporations Code section 7511, subdivision (f).

[22]Corporations Code section 7512, subdivision (b).

any authority or cogent argument. The CSEA having thus waived our plenary consideration of the issue,[23] we note that the legislators of this nation at all levels of government are capable of deciding the most controversial of issues on a roll call vote without the protection of a secret ballot, and many private associations—CSEA among them—do not make provision for secret ballots in their election procedures. Consequently, this is not a context suggesting that a secret ballot is a necessary component of due process.

## DISPOSITION

Our previously issued stay is vacated and the judgment is affirmed. In accordance with rule 26 of the California Rules of Court, the respondent is deemed the prevailing party and is entitled to recover costs of appeal.

Sims, Acting P. J., and Callahan, J., concurred.

---

[23]*People v. Freeman* (1994) 8 Cal.4th 450, 482, footnote 2 [34 Cal.Rptr.2d 558, 882 P.2d 249, 31 A.L.R.5th 888]; *Craddock v. Kmart Corp.* (2001) 89 Cal.App.4th 1300, 1307 [107 Cal.Rptr.2d 881].